| 26 | 417 |
| 97 | 652 |

## PICKENS vs. YARBOROUGH'S ADMINISTRATOR.

1. If a debtor deposits with his creditor, unconditionally, notes on a third person as collateral security, the latter thereby acquires the control and direction of their collection, and it becomes his duty to take all necessary measures to prevent the discharge of any of the parties thereto; and in such case notice to bring suit on them should be given to him.

2. If the creditor receives the notes under a special agreement, by which he is not to sue, but to collect in any other mode, he must, as to all persons without notice of the extent of his powers, be regarded as the general holder, and notice to sue may be given to him.

3. *It seems*, that if a surety notifies the holder of the note of his suretyship, and requires him to bring suit against the principal, this is a substantial compliance with the requisitions of the statute, (Clay's Digest, p. 532, § 6,)

27

and the party entitled to receive the notice may waive its being in writing ; but, whether sufficient or not under the statute, it is good as a common-law notice, when connected with proof of the holder's failure to sue the principal and consequent damage to the surety.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. GEO. D. SHORTRIDGE.

ASSUMPSIT by the administrator of David Yarborough, deceased, against James C. Harrell and Joseph Pickens, "to recover the amount of thirteen promissory notes made by the defendants and one John Reed the 16th day of January, 1843, and payable one year after date to L. A. Weissinger, late executor of the last will and testament of said David Yarborough, in the sum of $45 each ; which notes, as a part of the unadministered assets of the said Yarborough's estate, were turned over by said Weissinger, as executor, to plaintiff." The suit was commenced in January, 1850.

The defendant Pickens separately pleaded *non assumpsit*, payment, fraud, failure of consideration, want of consideration, and three other special pleas, which were as follows :

"1. That he is surety for said Harrell, his co-defendant, on the several promissory notes sued on in this case, and that he, as such surety, at ————, to-wit, in the county aforesaid, on the first day of February, 1844, gave notice in writing to said L. A. Weissinger, (he being then the qualified executor of said David Yarborough,) according to the statute in such case made and provided, requiring said Weissinger, as such executor, to bring suits on said notes, against the makers thereof, as soon as the law would permit ; and said defendant in fact says, that said Weissinger, executor as aforesaid, did not, in a reasonable time thereafter, and after said notes became due, commence suits on said notes, and proceed with due diligence, by the ordinary course of law, to recover judgment for, and by execution to make, the amounts due on said notes, although said Weissinger continued for a long space of time after said notice was given, to-wit, for the space of three years, to hold the office of such executor ; and said defendant further avers, that no suit was ever brought on said notes, until this suit now pending was instituted."

"2. That heretofore, to-wit, on the first day of February,

1844, he gave the executor of the estate of said Yarborough verbal notice to sue, and that suits were not brought; and that defendant was thereby injured in this, to-wit, that if suits had been brought when required, the money could have been made out of his principal."

"3. Same as first, except that notice in writing was waived."

Issue was joined on all these pleas, and the trial resulted in a verdict and judgment for the plaintiff; and against the defendant Harrell a judgment by default was taken.

On the trial, as appears from the bill of exceptions, after the plaintiff had read in evidence the several notes on which the suit was founded, the defendant Pickens introduced one Hugh Davis as a witness, " whose evidence was, in substance, as follows : That he was the attorney of John V. Cawthorn, and as such had charge and control of a note for $5,000, signed by James C. Harrell and David Yarborough, for the purpose of collecting the same ; that he brought suit on said note, in the Circuit Court of Perry county, against said Harrell, and recovered judgment for the whole amount due thereon in November, 1843 ; that said Yarborough died, and Leonard A. Weissinger became his executor ; that the estate of said Yarborough was largely insolvent, and on the 15th day of August, 1844, decrees were rendered by the Orphans' Court of said county, in favor of creditors of said estate, against said executor, for amounts severally due to them from the assets of said estate ; that said note of Cawthorn's was presented by witness against said estate, and on said 15th August, 1844, a decree was rendered in his favor for the per-cent due from said estate on his note, amounting to the sum of $1,100, against said executor ; that said executor was anxious to make some arrangement with the creditors of said estate who had obtained decrees against him, by which some indulgence should be extended to him, he agreeing to convey his property to secure said creditors ; that witness, as agent or attorney of said Cawthorn, was not willing to assent to said arrangement, without some further security than that proposed by said executor ; that thereupon said Weissinger agreed to place, and did place, in the hands of witness, the notes in plaintiff's declaration mentioned, to be held as collateral security to said Cawthorn's decree in said Orphans' Court, witness then

being, as before stated, said Cawthorn's attorney to collect said claim; that Harrell had paid about $1,500 on the judgment against him in the Circuit Court, which had not been credited thereon, and that it was understood and agreed between witness, Harrell and said executor, that the whole amount of said judgment should be collected by execution from said Harrell, without regarding said credit of $1,500, and that enough of the moneys collected in place of said credit should be applied in discharge of the notes mentioned in plaintiff's declaration to satisfy the same; that this course was agreed on and adopted as a summary method of collecting said thirteen notes; that said executor desired to have said notes collected in this way, so that the moneys due thereon should be ready, at a proper time, either to be distributed with the other assets of said estate, or to be used in discharging said Cawthorn's decree in the Orphans' Court, in the event that the same should not be paid from some other source (but there was no evidence to show that said Davis had authority to collect said notes in any other way); that this arrangement was entered into about the time, or in a short time after the date of said decree in the Orphans' Court.

"Said Davis further testified, that he considered himself the agent of said Leonard A. Weissinger; that after said notes were thus placed in the hands of witness, to-wit, in the fall of 1844, Alex. Graham, Esq., the attorney of said Pickens, under the written instructions of said Pickens, gave notice to said Davis, that Pickens was only the surety of Harrell on said notes, and to bring suit on said notes against the parties thereto, and sat down at a table and commenced drawing a written notice, which said Davis waived, and said he would admit notice, and then told Graham that Pickens need not give himself any further trouble about said notes, because an arrangement had been made by which the same would be paid without resorting to him for the money due thereon; that at the time said notice was so given, said Harrell was solvent, and so continued until the summer of 1845, and that if suits had been brought on said notes within a reasonable time after said notice was given, the money thereon could have been made out of said Harrell; that Harrell had been insolvent since the fall of 1845, and still so

continued; that said notes remained in the hands of said Davis four or five years after they were so placed there.

"Plaintiff then introduced said Leonard A. Weissinger as a witness, who stated the following, in substance: That in the latter part of the year 1844, he was desirous of giving a deed of trust on his lands, and at that time said Cawthorn, for whom said Hugh Davis was acting as attorney, had a judgment against him as the executor of Yarborough's estate; that he went to Davis, to see if he, as attorney for Cawthorn, would assent to his giving the deed of trust, and would remove any liens that might be in the way of his making said deed; that Davis refused to do so, unless he as attorney and the rights of his client could be protected; that witness then placed in the hands of Davis, as attorney for Cawthorn, the notes now sued on, as collateral security for the payment of the decree, and for that purpose only; that Davis was not his agent, and was not acting as attorney for him in the collection of said notes, but that said notes were placed in his hands for the indemnity of his client, Cawthorn; that he was never notified to bring suit on the notes now sued on, and that if he had been notified, he would have sued on the same; that an arrangement was made between Harrell and Davis, such as the one mentioned by Davis, but that he was not a party to the same. He further stated, that he was once present when Davis told A. Graham of the arrangement made by which the money could be realized from a sale of Harrell's property to pay said notes, and that Graham expressed himself satisfied with the arrangement; but witness had no recollection of being present at any time when Graham had given notice to Davis for Pickens to bring suit on said notes. On cross-examination by defendant Pickens, Weissinger deposed, that Harrell was the principal maker of said notes, and that Pickens was his surety on the same; and that he continued executor of the estate of said Yarborough more than twelve months after said notes were so placed in the hands of said Davis.

"All the foregoing evidence of the witness Davis was then objected to by the plaintiff, and the court sustained the objection, and excluded the same from the jury, on the ground that it was not sufficient to show such agency in Davis as that notice to him to sue on said notes would discharge said Pickens

as surety on the same ; and also, that, although said Davis held said notes as collateral security to said Cawthorn's claim, notice to him to bring suits on said notes would not discharge said Pickens ; and to this ruling of the court said Pickens excepted.

"Said Pickens then offered to prove, that in a conversation between himself and said Davis, in January or February of the year 1845, that Davis, while said notes were in his possession as aforesaid, told Pickens to give himself no further uneasiness about said notes ; that the notice which he had given him (Davis), through Mr. Graham, would discharge him as surety on said notes. To this evidence plaintiff also objected, and the court sustained the objection, and excluded the same from the jury ; and said defendant thereupon excepted."

These two rulings of the court are now assigned for error.

I. W. GARROTT, for the appellant :

1. Davis held the notes as collateral security ; and no other person, not even Weissinger himself, had the right to control them, or to collect the money due thereon, by suit or otherwise. He was, therefore, the only person to whom notice could have been given : notice to Weissinger, after he had parted with the notes, would have been futile. As to the rights of holders of collateral securities, see Trotter v. Crockett, 2 Port. 401; Russell v. Hester, 10 Ala. 536.

2. Davis deposed, that he was Weissinger's agent, and that he, Weissinger, and Harrell had made an arrangement to collect these notes ; while Weissinger, who was introduced by plaintiff below, denied this ; and thereupon the court excluded all the evidence—that is, the court assumed the right to determine from this conflicting evidence that Davis was not the agent of Weissinger. The court should have allowed the evidence to go to the jury, and let them decide who should be believed, and whether or not Davis was agent in fact ; in this, the court clearly invaded the province of the jury. Notice to the agent is notice to the principal.—Story on Agency, § 140. Whether Davis was authorized to grant indulgence to Weissinger, or to receive this collateral security, does not appear; but from the facts deposed to by him, it seems clear that he was Weissinger's agent and attorney for collecting said notes,

and notice to him, therefore, would be sufficient. To allow a recovery against Pickens, after what is shown to have passed between him and Davis, and between his attorney and Davis, would be to allow the perpetration of a fraud ; because he was completely lulled into security thereby, and prevented from proceeding to have the money collected from Harrell at a time when he was solvent.—See Teague v. Russell & Moore, 2 Stew. 420, where the question is settled.

3. The evidence of Davis, that he "considered himself" Weissinger's agent, was not objected to on the ground that it was illegal : it was allowed to be introduced, and was then excluded by the court, not on the ground that it was illegal, but because it "was not sufficient" to establish the fact of agency. The appellee cannot raise a question here, which was not raised in the court below, and on which that court did not pass.

Jos. R. JOHN, *contra:*

1. The holder of collateral security for a special object has not the legal title, and is not the owner's agent, except for the special purpose for which it was placed in his hands. Davis was not the general holder of the notes ; his agency was expressly limited to the single purpose of collecting from Harrell in the manner stated. He was not the agent to collect from any other party to the notes than Harrell, and from him only in a particular manner. If he had been clothed with authority to collect generally, he would have had the right to sue ; but it is shown that he had no right to sue, and had not even the right to receive the money. Notice to the agent is only binding on the principal "when it arises from, or is at the time connected with, the subject-matter of the agency."—Story on Agency, §§ 126, 133, and n. 1, 140.

2. Graham was the authorized agent of Pickens in this particular matter, and Davis explained to him the understanding and arrangement for the collection of the notes, and consequently his authority. Pickens, then, knew the extent of Davis' authority, and cannot complain.

3. The declarations, admissions, or acts of an agent, to bind his principal, must be in regard to the matter to which his authority relates, and then they must be part of the *res*

gestæ.—Story on Agency, §§ 134-5-6, and n. 1; Greenl. Ev., §§ 113, 114.

4. The evidence was correctly ruled out, because it was illegal.

5. The notice was clearly insufficient. Davis only waived notice in writing; and if it had been in writing, it would have been insufficient. It was not a statutory notice, and was not good as a common-law notice.—Shehan v. Hampton, 8 Ala. 945.

6. There was no conflict between the testimony of Weissinger and that of Davis: the latter did not say that he was agent, but that he "considered himself" agent; while Weissinger expressly says he was not.

7. There was no fraud on Pickens; and, even if Davis did commit a fraud on him, this could not in any way affect the rights of Yarborough's representatives. Weissinger could not authorize the commission of a fraud; and if Davis committed a fraud without authority, he alone is responsible for the consequences.

GOLDTHWAITE, J.—As a decree had been rendered against the estate of Yarborough, the representative of that estate had authority to pledge the notes sued on as collateral security for its payment.—Wheeler v. Wheeler, 9 Cow. 34. It is clear, also, under our decisions, that where a creditor has received notes as collateral security for his debt, *unconditionally*, without any instructions governing the course of collection, he is bound to take the necessary steps to perfect the liability of the parties; and if the security is lost, or rendered unavailable, by his neglect, he must bear the loss.—Russell v. Hester, 10 Ala. 535, and cases there cited.

In the present case, however, it is urged on the part of the appellee, that the same principle does not apply, for the reason, that the party who received the notes had not authority to sue, but was by his agreement confined to a particular mode of collection. We think, the evidence, as set forth in the record, leaves this question in some doubt; but conceding that Davis received the notes simply as a deposit, or pledge, to secure the payment of the decree, and without authority to sue, we still think the notice was properly given to him.

Weissinger was, in law, the owner of the notes. If he deposited them in the hands of a third party, to secure the payment of a decree which had been rendered against him in his representative capacity, retaining the power of control and direction so far as suit was concerned, the party in whose hands they were placed must, in law, be regarded as his agent to receive the money due upon the notes. The possession of the notes by Davis, with the consent of the owner, and the authority to receive the money, was *prima facie* evidence that he was authorized to act generally in relation to them.—Erick v. Johnson, 6 Mass. 196. Were the rule otherwise, it would, in many cases, operate as a fraud. If Davis, when the notice was given him, had explained the extent of his powers, under the aspect in which we are considering it, it is possible that the case might be different; but the record does not advise us that such was the case. Davis states in his evidence, that after the notice had been given, he informed the agent of Pickens that his principal need give himself no further trouble about the notes, as an arrangement had been made by which they would be paid without resorting to him for the money; but from this testimony we would not be warranted to infer, as a legal conclusion, that the extent of the authority of Davis in relation to the notes was made known.

Our conclusions are, briefly, these: If a debtor deposits notes unconditionally with a creditor, as security for a debt, he thereby gives to the latter the control and direction so far as their collection is concerned, and it then becomes the creditor's duty to take all necessary measures to prevent the discharge of any of the parties to the notes received by him. If the creditor receives the paper under a special agreement, by which he is not to sue, but to collect in any other mode, he must, as to all parties without notice of the extent of his powers, be regarded as the general holder; and in either aspect, upon the facts as disclosed by the record, the notice may have been properly given. We say "may"; for, assuming that Davis may not have had authority to sue, the court was not warranted by the evidence in drawing the conclusion that the extent of his powers in this respect was made known to the agent of the appellant.

In relation to the sufficiency of the notice: The record

shows, that the agent of Pickens gave notice to Davis, after he had received the notes from Weissinger, and while they were in his possession, that his principal was the surety of Harrell upon them, and to bring suit upon the same against the parties thereto; and this, in our opinion. would have been sufficient as a statutory notice, had it been in writing. It meets substantially the requisitions of the act (Clay's Digest 532, § 6; Shehan v. Hampton, 8 Ala. 943); and it requires no argument to show that the party to whom the notice is to be given may waive its being in writing. If the notice, however, did not fully meet the requisitions of the statute, it would be good at common law, when connected with proof showing the failure to sue, and the damage to the surety from such failure.—Herbert v. Hobbs, 3 Stew. 9; Goodman v. Griffin, *ib.* 160; Bruce v. Edwards, 1 *ib.* 11.

Judgment reversed, and cause remanded.