FRANKLIN SAVINGS INSTITUTION, Appellant, *v.* EMIL PREE-TORIUS, Respondent.

### January 28, 1879.

Where it is agreed that shares of stock pledged as collateral security for a note may be sold by the pledgee at his discretion, and without notice to the pledgeor, the former is not bound to sell the stock at the request of the latter, immediately upon default; his refusal to do so may or may not be negligent. The pledgee may exercise his own judgment as to the sale of the stock, and is liable only for negligence.

APPEAL from St. Louis Circuit Court.
*Reversed and remanded.*

BROADHEAD, SLAYBACK & HAEUSSLER, for appellant, cited: Edw. on Bail. 251; *Thornton* v. *Pigg*, 24 Mo. 251.

KEHR & TITTMANN, for respondent, cited: *Richardson* v. *Insurance Co.*, 27 Gratt. 753; *Barrow* v. *Rhinelander*, 3 Johns. Ch. 614; *Goodall* v. *Richardson*, 14 N. H. 572; *Slevin* v. *Morrow*, 4 Ind. 425.

HAYDEN, J., delivered the opinion of the court.

This is a suit on a negotiable promissory note payable to the plaintiff, and given to it for $500, money borrowed of the plaintiff by the respondent. At the time he gave the note, the defendant pledged to the plaintiff twelve shares of stock which he owned in the plaintiff's bank. The answer

pleads payment of the note, and, as a counter-claim, that the defendant, before the note matured, instructed the plaintiff to sell the stock and apply the proceeds to pay the note ; which the plaintiff refused to do, but sold the shares afterwards and when they had depreciated, by which the defendant lost $751.10, for which he asked judgment.    The reply denied any instructions to sell the stock.

The note is for $500 ; was dated December 23, 1875, payable sixty days after date, and was a renewal.    The defendant testified that before the note became due he asked the cashier of the bank to sell the stock when the note would be due ; that he told the cashier to sell the stock, and so told the messenger ; that the cashier told the defendant that unless the note was renewed the stock would be sold ; that the defendant told the cashier that he (the defendant) wanted the stock sold, and did not want the note renewed. There was testimony tending to show that the reasonable market value of the stock during February and March, 1876, was $30 a share.    The plaintiff sold the stock in March, 1878, for about $28.    The agreement of pledge showed that the defendant, in default of payment of the note at maturity, authorized the bank to sell the collateral by public or private sale, or otherwise at its option, without notice to the defendant, and to apply the proceeds to the payment of the note and expenses, etc. ; and the agreement stated that in case the proceeds of the sale, etc., were not sufficient, the defendant would pay the balance on demand, etc.    The court assessed the damages of the plaintiff at $171.50, and found for the plaintiff on the defendant's counter-claim.    The plaintiff appealed.

The court below refused the plaintiff's instructions, and gave the following at the request of the defendant: " If the court, sitting as a jury, believe from the evidence that, before the maturity of the note on which this suit is brought, defendant requested or notified plaintiff's cashier to sell the stock pledged with said note as collateral security, upon

the maturity of said note, then it was plaintiff's duty so to do upon the maturity of the note, or within a reasonable time thereafter.

"And if the court, sitting as a jury, believe from the evidence that plaintiff nevertheless neglected to sell such stock until the sixth day of March, 1878, and that during the interval between the maturity of said note, or a reasonable time thereafter, and said sixth day of March, 1878, said stock depreciated in value, then the loss by reason of such depreciation must be borne by the plaintiff."

The present is a case of shares of stock which had a market value, and which had been pledged by the defendant and received by the plaintiff as collateral for the payment of the note. The cases, not of pawn or pledge, but of other kinds of security, cited by the plaintiff and used in argument have no application here. The property, as such, is still that of the pledgeor, and of this the pledgee assumes the custody and care. The pledgee has *jus in re aliena*, a special right in the pledgeor's property for the purpose of compelling the pledgeor to pay the debt. The pledgee stands to a certain extent in a fiduciary relation, and therefore cannot ordinarily purchase the property when sold. The pledgeor retains a double interest, in his having his debt paid and in a possible surplus. But as the pledgee has taken possession, the pledgeor can make a sale only through the pledgee. But if the pledgee has a right to make his claim out of the property, and it has been put into his hands for this purpose, how can it be said there is a right in the pledgeor to require a sale at a given time? This virtually asserts in him a right he has surrendered with the pledge. To say that the debtor has an absolute right to require a sale at a given time, is to say that the creditor is not to exercise his judgment and skill in the management of his own special property. On the other hand, so far as the pledgeor's interest is involved, the pledgee ought only to be responsible for negligence, not for a failure which may be consistent

with diligence and even indicate vigilance and skill in calculating the chances of the market.     The refusal to sell upon request of the debtor may, on the other hand, tend to show negligence or want of reasonable care, it being merely a fact to be considered with other facts.

The cases cited by the defendant sustain this view.     *Richardson* v. *Insurance Company*, 27 Gratt. 749, is to the point that mere failure to sell, without averment of acts importing negligence, is not well pleaded.     Request by the debtor that the creditor sell may tend to prove negligence and may be essential to establish it.     *Goodall* v. *Richardson*, 14 N. H. 572.     The general rule by which a creditor who receives as collateral for the payment of his claim the obligation of a third person, is charged, so far as the debt is concerned, not only with what he actually receives, but with what but for his own laches he might have received, rests upon the obligation of the creditor to use reasonable care in realizing upon the security.     *Barrow* v. *Rhinelander*, 3 Johns. Ch. 614 ; *Lawrence* v. *McCalmont*, 2 How. U. S. 427 ; *Wakeman* v. *Gowdy*, 10 Bosw. 208 ; *Pickens* v. *Tarborough*, 26 Ala. 417 ; *Slevin* v. *Morrow*, 4 Ind. 425.     In these cases, it is not merely that time is given by the creditor, — for, as observed by the vice-chancellor in *Williams* v. *Price*, 1 Sim. & St. 587, that may be a provident act, and afford the best chance of recovering the debt, — but that there is default or neglect on the creditor's part.

The present case was tried by the court, and it may be that the giving of the instruction made no difference in the result ; that the court would have found that the failure of the plaintiff to sell the shares as requested could only have arisen from want of ordinary care upon the part of the cashier ; but we cannot assume that this was the fact.     The plaintiff had a right to have the case put upon the correct legal theory, and the finding that the loss to the defendant arose from the plaintiff's want of reasonable care was material.     The point of the plaintiff that there is no evi-

·dence of a request to sell communicated to the plaintiff is not well taken. It matters not what the messenger testifies, for here the question is not as to the weight of evidence.

The judgment will be reversed, and the case remanded with directions to proceed according to this opinion. Judge ·BAKEWELL concurs; Judge LEWIS is absent.