*HENRY W. LAMBERTON, *et al.*,

*v.*

WILLIAM WINDOM, *et al.*

When a debtor endorses and delivers to his creditor a negotiable promissory note *made by a third party* as collateral security for a debt, in the absence of any other agreement, and the note is lost through the negligence of the creditor, by the insolvency of the maker, the creditor is liable, and these facts set up in an answer as a defence to an action on the principal debt are sufficient.

This is an appeal from a judgment of the district court for Winona county. The action was upon a promissory note, and issue was joined therein, and the cause tried by the court without a jury, and judgment rendered in favor of the plaintiffs. The pleadings, and the points presented in the case, are sufficiently stated in the opinion of the court.

SMITH & GILMAN, & B. FRANKLIN for Appellants.

I. The party taking the assignment of a chose in action as collateral security, acquires title for the purpose of mak-

*Chief Justice WILSON being a party to this action, took no part in the argument, consideration or determination of it.

·ing it available. He is made by the agreement between himself and the assignor a bailee of the note and a trustee for the parties, subject to all the duties and responsibilities of a trustee. 2 *Kent's Com., Lecture* 40, *pages* 578, 583; *See* 2 *Am. Lead. Cases where the above doctrine is discussed,* 185; 2 *Lead. Cases in Equity,* 375.

II. The holder of a note assigned as collateral security, has no authority, unless expressly authorized by the contract, to sell or dispose of the note. His obligation or implied agreement is to do whatever may be reasonably necessary to collect the note and apply the proceeds. *Story's Bailments, Sec.* 321; 1 *Parsons' Contracts*; 3d *Ed. Note n., page* 592; *Wheeler vs. Newbold,* 16 *N. Y. Rep.* 392; *Brown vs. Ward,* 3 *Duer,* 660; *Wheeler vs. Newbold,* 5 *Duer,* 29; *Atlantic Ins. Co. vs. Boles,* 6 *Duer,* 583; *Nelson vs. Wellington,* 5 *Bosworth,* 186; 5 *Bosworth,* 444, 445.

III. The party who takes a pledge of an article of property or chose in action as collateral security (unless it is otherwise expressly agreed) assumes the responsibility of doing whatever is reasonably necessary to the preservation of the pledged property. If he neglect to do any act which a man of common prudence would be required to do for the preservation of his own property under like circumstances, he must be held responsible for all losses arising from such neglect. *Lyon vs. Huntingdon,* 12 *Serg. & Rawle,* 61; *Jennison vs. Parker,* 7 *Mich.* 355; *Story on Bailment, Sec.* 342; *Leas vs. Jallers,* 10 *Serg. & Rawle,* 307; *Goodhue vs. Clay,* 6 *B. Munroe,* 226; *Slevin vs. Morrow,* 4 *Porter,* 425, (*Indiana.*); *Kiser vs. Rudick,* 8 *Blackford,* 382; *Foot vs. Brown,* 2 *McLean,* 369; *Noland vs. Clark.* 10 *B. Munroe,* 239; 2 *Am. Lead. Cases,* 351 *to* 361; *Lawrence vs. McCalment,* 2 *Howard U. S.* 426; *Doyle's Case,* 2 *Watts & Serg't,* 463; 2 *American Lead. Cases,* 185: *Dayton vs. Trull,* 23 *Wendell,* 345; *Wil-*

*liams vs. Pierce*, 1 *Sim. & Stewart*, 581; *Chambulin vs. De-larive*, 2 *Wilson*, 353; *Mayhew vs. Crickett*, 2 *Swanston*, 185; *Ex parte More*, 5 *Cox*, 63; 6 *Watts*, 192; 2 *Am. Lead. Cases*, 350–1–2.

IV. If the agreement, express or implied, under which the collateral is obtained, makes no provision for indemnity or payment *in advance* of expenses of litigation, the pledgee cannot on his own motion impose such condition or add to the contract. *Story's Bailment, Sec.* 306.

V. The duty of a party to whom a chose in action is assigned as collateral security to use diligence in its collection and his responsibility for gross neglect, as between himself and the party from whom he obtained the collateral, "has never been doubted." *Lawrence vs. McCalment*, 2 *Howard U. S. Rep.*, 426.

VI. The court below appears to have lost sight of the difference between the rights and responsibilities of the parties to the agreement in the collateral note, and the right of a surety, a person having no *vested right in or under the contract.* A surety is allowed because of his relation to the principal debt as surety for one of the contracting parties, to acquire equities therein upon the performance of certain acts *on his part*, and in consequence acquires rights in the contract of his principal. Whether he will do what the law requires in order to *avail himself* of the benefits of the agreement is for *him* to determine at the *proper* time.

The rules of law applicable to sureties have no application to this case. If the obligation of the bailees or trustees to use reasonable diligence is raised by the contract, as set up in the pleadings, such obligation is not created by the request alleged, nor could the omission to so request or indemnify, defeat or affect this part of the contract. 2 *Equity Leading Cases*, 377; 2 *American Leading Cases*, 356 *to* 362.

Lamberton et al. v. Windom et al.

VII. Defendants were not sureties, and therefore not bound to take the steps required of sureties or strangers to the agreement, and had such demand been made by them, the plaintiff could have replied (as in effect he did) that defendants had assigned the note upon an agreement with the assignees that they should use reasonable diligence to make the amount of the note and to collect and apply the proceeds, and that if they failed so to do defendants could have their remedy, and that when a loss was actually sustained, or plaintiffs had violated some one of the conditions of the contract, defendants could have their remedy. That they were not bound to change their agreement or disposed to change their securities. 2 *Leading Cases in Equity*, 375 *to* 379.

VIII. The obligation of defendants to pay their own note may remain, notwithstanding the collateral. The neglect to collect, or apply the proceeds if collected, does not affect the principal debt, so as to operate to pay it—such neglect creates a cause of action, which may be set up as a counter claim, or the original indebtedness may be paid and an action sustained for damages.

The neglect of defendants, or their inability, to pay their own note, is no justification to plaintiffs for wilfully refusing to perform their part of the agreement under which they obtained the Carpenter note.

Chatfield & Irwin, for Respondents.

This case must be determined by the principles and rules governing pledges.

Notes deposited as collateral security are regarded as pledges, and in regard to them the parties sustain towards each other the relation of pledgor and pledgee. *Castner vs. Sumner*, 2 *Minn. Rep.* 44; *McLean vs. Walker*, 10 *John.*

*Rep.* 471; *Garlick vs. James,* 12 *John. Rep.* 146; *Courtelyou vs. Lansing,* 2 *Cai. Cas. in Er.,* 201; 2 *Kent's Com.* 577, 3*d edition.*

The rights and obligations of the pledgees only are necessary to be considered in this case.

The respondents as pledgees are not the owners of the note against Carpenter. They have only a lien upon it, dependent upon their possession of it. The general title or ownership remains in the appellants as pledgors, subject to the special property of the respondents as pledgees thereof. *See the authorities above cited.*

Though the pledgee may, he is not, by the law, bound to resort to the pledge to obtain payment of his debt, and as the pledge is not payment the pledgee may bring his action to recover and collect his debt against the pledgor. *Schroeppell vs. Shaw,* 3 *Comst. Rep.* 446; *Smouse vs. Bail,* 1 *Grant's Rep.* 397. Nor can the pledgor force the pledgee to resort to his pledge or pay for it, or to exchange it for other securities. Same authorities. *Toby vs. Barber,* 5 *John. Rep.* 68; *Rhinelander vs. Barrow et al,* 17 *John Rep.* 538.

The pledgee is not authorized to do anything with the pledge except to convert it into money in the manner directed by the law, nor can he be required to incur any expense on account of it without indemnity. He is only bound to safely keep the pledge, and so long as he does that, and is able to return the *identical* property upon redemption, he is free from any obligation to the pledgor on account of it. *Dykers vs. Allen,* 7 *Hill Rep.,* 497; *Wilson vs. Little,* 2 *Com. Rep.,* 443; 2 *Kent's Com.* 577, 3*d ed. ;* 1 *Parson on Cont.,* 591; *Chitty on Cont.,* 476–7, *Perkins' ed.*

Such is the general doctrine of pledges, and it applies to promissory notes as well as other property under pledge. The only difference between promissory notes and other

property held in pledge is this, that if the pledgee of nego-
tiable paper elects to resort to his pledge he must take
proceedings to collect it instead of selling it—and this is a
modern distinction of questionable propriety. It may be very
proper in large commercial cities where it originated, and at
the same time unjust and severe in its effect in the country.
It has not yet been adopted here, and if it shall be, it cannot
affect this case, for it has not yet been held anywhere that
the pledgee of such paper is bound to resort to it. Like the
pledgee of any other property he may or may not resort to it
at his election. If he will not resort to it, he cannot be
compelled to do it, and if the pledgor desires the prosecution
of the pledged paper, he must pay his own debt, and thus
redeem and obtain control of it himself. Unless and until he
does that, the fault and delinquency are his own. *Schroeppell
vs. Shaw, and Smouse vs. Bail above cited.*

It follows that so long as the pledgors (the appellants in this
case) are thus delinquent and in fault, any loss occasioned by
the failure or insolvency of the maker of the pledged note,
must be borne by them. If the pledgors had discharged their
duty and paid their debt at maturity, they would have
redeemed and could have controlled the pledged paper, and
it is their fault that it is lost, if lost it is.

The district court was, therefore, clearly right in holding
that, under the circumstances of this case, as presented to
him, it was wholly immaterial whether the maker of the
pledged note was solvent or insolvent, for it could neither
discharge the appellants from their liabilities on their own
note, or impose any obligation on the respondents for the
pledged note.

The judgment of the district court ought to be affirmed.

*By the Court*—McMillan, J. The complaint avers that on

the 4th of Sept., 1857, the defendants, partners, were indebted to the plaintiffs in the sum of three hundred and seventy dollars and seventy cents; that afterwards and on that day the defendants in consideration of said indebtedness, made their promissory note bearing date the same day, for three hundred and seventy dollars and seventy cents, payable to the order of H. W. Lamberton, one of the plaintiffs, thirty days after date with interest, at sixty per cent per annum after due; that no part thereof has been paid except twenty-five dollars paid and endorsed thereon, on the 5th of October, 1858.

The defendants in their answer admit the making of the note and the payment thereon; but allege as a defence thereto and a counter claim, that on the 4th of September, 1857, and simultaneously with the execution of the note mentioned in the complaint, the defendants endorsed and delivered to the plaintiffs as collateral security for the payment of said note, a certain other promissory note made by one Willet Carpenter, August 12th, 1857, to the order of the defendants for $1150, payable ninety days after the date thereof, with interest, at ten per cent per annum, but if not paid at maturity with interest at the rate of three per cent per month till paid. That at the time of the delivery and endorsement of said Carpenter note, it was of the value of $1150, and that the plaintiffs agreed to, and did receive the same as collateral security for said note mentioned in the complaint. The answer also avers that at the time of the endorsement of said note as collateral security, and at the time the same became due, Carpenter was solvent and able to pay the same, and was the owner of a large amount of real and personal property in the county of Winona, of the value of ten thousand dollars and more, out of which the said note, principal and interest, could have been made and collected if the plaintiffs had used reasonable and proper diligence in the

collection of said note ; that Carpenter continued to own said property, and remained solvent and able to pay said note for a long time after its maturity, viz : for eighteen months ; and during said time the note with reasonable diligence might have been collected, of which the plaintiffs had notice.

That in July, 1859, Carpenter became and has since been and is still insolvent, and has no property out of which the note can be collected; that the note is not paid or collected, and is still in the hands of the plaintiffs.  That the plaintiffs failed and neglected to present the note to Carpenter at maturity, or to demand payment thereof, or to notify defendants that the note was unpaid or dishonored, and failed to take any steps for the collection thereof.  That in the spring or summer of 1858, and whilst said Carpenter was solvent and able to pay said collateral note, the *defendants called upon the plaintiffs and informed them that the note could be collected from Carpenter, and requested the plaintiffs to sue or collect the same, or to permit these defendants to sue the said note, and then and there offered to indemnify said plaintiffs by good and sufficient real estate security for their debt in the premises ; that the plaintiffs refused to sue said collateral note or permit defendants to sue or collect the same*, and so grossly neglected the same, that said note and indebtedness of said Carpenter became and is wholly lost.

The third defence in the answer sets up an express agreement by the plaintiffs to collect the collateral security, otherwise it is substantially the same as the preceding one.

A fourth defence supplementary to the defences aforesaid, sets up that the plaintiffs have held said note for more than six years, and that the statute of limitations has run against the collateral note while in possession and under the control of the plaintiffs, and that long before the statute had run against the note the plaintiffs were urged by the defendants

to take some steps for the collection of the same, or to suffer the defendants to do so, and that plaintiffs were offered full and ample security for such action, yet the plaintiffs have failed and neglected at all times to take any steps whatever for the presentation, demand, prosecution or collection of the same from the maker.

A jury trial was waived. Upon the trial the defendants admitted that the promissory note on which the action is founded is the joint property of the plaintiffs. The defendants called as a witness, Willett Carpenter, the maker of the note mentioned in the defendants' answer as having been endorsed and transferred by them to the plaintiffs as collateral security for the payment of the note on which this action is founded, and the counsel for the defendants asked the witness the following question : " State whether you owned any property or real estate here on the 15th day of November, 1857, and during the year 1858 ? The defendants' counsel here state and admit that they do not intend or expect to prove the special, or any contract or agreement of the plaintiffs to collect the Carpenter note set up in defence, number two, other than the agreement implied by the endorsement and transfer of defendants to plaintiffs, and the receipt thereof by plaintiffs, as collateral security for the payment of defendants' note mentioned in the complaint.

Thereupon the counsel for the plaintiffs objected to the question put to said witness, and the answer which he may make thereto as immaterial. The court sustained the objection and the counsel for defendants excepted to the decision of the court. Whereupon the counsel for the plaintiffs moved for judgment in their favor, on the pleadings and the admissions above stated, for the amount due on the note described in the complaint for principal and interest, which motion was granted and the defendants' counsel excepted. Judgment

Lamberton et al. v. Windom et al.

was thereupon ordered for the plaintiffs and judgment entered, from which this appeal is taken.

Judgment having been entered upon the pleadings, if the answer of the defendants, qualified by their offer on the trial, sets up a defence, the judgment must be reversed. The question presented in this case therefore is whether a creditor who holds a promissory note of a third party made to his debtor and endorsed by such debtor to, and received and held by the creditor as collateral security for his debt, is liable under such circumstances as are set forth in the answer for the loss of the note through the insolvency of the maker. Questions involving the rights and duties of holders of collateral securities have come up in various forms, qualified by the nature of the agreement under which they were received and held, the relation of the parties to such agreement, and the character of the property held as collateral.

In this case there is no express agreement with reference to the pledge; the rights and obligations of the parties therefore are such only as arise from the endorsement and delivery of a negotiable promissory note of a third person by the principal debtor as a security for his debt. No question as to the rights or obligations of a surety is involved, the question presented being between the immediate parties to the contract, the principal debtor as pledgor, and the creditor as pledgee. So far as the authorities upon this subject are concerned, there is no doubt that the pledgee of negotiable paper as collateral security is bound to ordinary diligence in preserving the legal validity of the pledge, and answerable for a loss through a corresponding degree of negligence to the extent of such loss. 2 *Pars. on Contr.*, (5th *Ed.*,) 511 ; *Jennison vs. Parker*, 7 *Mich.*, 355. And we think, as between the *principal* debtor and the creditor, in a pledge of a similar character of negotiable promissory notes, for the payment of

which third parties are responsible, the authorities both in England and in this country impose upon the pledgee ordinary diligence to preserve the pecuniary value of the pledge, requiring, when necessary, active measures to prevent a loss by the insolvency of third parties, who are liable for their payment. *Ex parte More*, 2 *Cox*, 63 ; *Williams vs. Pierce*, 1 *Sim. & Stewart*, 582 ; 2 *Pars. on Contr.*, (5*th Ed.*,) 110 ; *note T*, citing *Noland vs. Clark*, 10 *B. Monr.*, 239 ; *Beale vs. The Mechs. Bank*, 5 *Watts*, 529 ; 3 *Leading Cases in Eq.*, (3*d Am. Ed.*,) 552–6 ; 4 *Porter*, 425 ; *Steven and others vs. Monroe*, *Lyon and another vs. Huntington Bank*, 12 *Serg. & Rawle*, 67. The same doctrine is recognized in *Bank of the U. S. vs. Peabody*, 8 *Harris*, 457 ; *Biter vs. Brough*, 1 *Jones*, 127.

In *Wheeler vs. Newbould*, 16 *N. Y. Rep.*, 369, where the facts *constituting the pledge* are substantially like those in the case at bar, Brown, J., delivering the opinion of the Court of Appeals, says : "The contract was a pledge of the notes and not a mortgage. It was entirely silent as to the power of the pledgee on the subject of the pledge, it imposed no conditions and prescribed no terms in regard to the disposition of the notes; in the event of the loan not being paid at maturity. His power and authority to deal with them is to be determined by the law. The notes were deposited in his hands as collateral security, and we are to say what that term imported, what rights it conferred and what duties it imposed upon the pledgee. The primary, and indeed the only purpose of the pledge is to put it in the power of the pledgee to reimburse himself for the money advanced when it becomes due and remains unpaid. *The contract carries with it an implication that the security shall be made effectual to discharge the obligation.*"

Although the question involved in that case was the proper disposition of the pledge, yet if this reasoning is sound, and

especially the language we have taken the liberty of italicising, there would seem to be little doubt that the pledgee in case of loss of the pledge through his negligence would be liable. See also *Atlantic F. & M. Ins. Co. vs. Boies*, 6 *Duer*, 586; *Muirhead vs. Kirkpatrick*, 9 *Harris* 237–41. In 3 *Leading Cas. in Equity* 556–7, discussing the question of collateral security and giving the result of the cases, this language is used speaking of the creditor: " On the other hand he must use due diligence in the management and collection of securities binding the persons or estates of third persons at the risk of discharging the debt itself if guilty of negligence, and with it of course all liability on the part either of principal or surety. See also *Lawrence vs. McCalmont et al.*, 2 *How. Sup. Ct. U. S.* 454; *Goodlee vs. Clay*, 6 *B. Monroe* 236.

There are many other cases in which principles are enunciated tending to the same conclusion, which need not be cited. The cases of *Smouse vs. Bail*, 1 *Grant's Rep.* 397, and *Schroeppell vs. Shaw*, 3 *Comstock*, 446, are relied upon as sustaining a contrary position. The syllabus in *Smouse vs. Bail*, goes to the extent claimed, but an examination of the case shows clearly that the decision does not sustain the syllabus of the reporter. From the paper book of the plaintiff in error, which has been furnished us by the counsel for the respondent here, it appears that the facts in that case were as follows: In the spring of 1845, Smouse, residing in Missouri, and about to leave there sold his *pre-emption right* to a tract of land in that State to one John Linus, for $260, of which $60 was paid in cash and Linus gave his note for the balance, $200. This note was placed in the hands of a merchant in Missouri for collection, who gave Smouse a receipt for the same, dated the 19th day of April, 1845, the same date with the note. On the 2d January, 1846, Smouse

purchased of Bail, in Pennsylvania, a blacksmith shop, &c., for $150, which Smouse agreed to pay, and for the better securing the payment of the same, assigned to Bail the receipt for the note, given by the merchant with whom it was left for collection, Bail agreeing "that in the event of his receiving the whole amount of said note to refund to said Smouse the surplus after deducting the said one hundred and fifty dollars." It was also proved that at the time of the transfer of the receipt for the note, Bail said he was going to Missouri, and that it would suit him to take it and collect it; that he was going for other purposes, but that it would suit him to attend to the collection of it. Upon this agreement and understanding Smouse transferred the note in the manner mentioned to Bail. Bail never collected the note or in any way attended to it. Smouse gave notice to Bail to collect the note or return it to him for collection, both of which Bail refused to do. It also appears that Linus, the maker of the note, was insolvent and had no property out of which the note could have been collected up to the time of his leaving Missouri; and that at one time he had proposed that if Smouse would refund him the amount he had paid he would transfer the land to him; the *title to the land was in the U. S.*, and Linus had only a *pre-emption claim*. It is manifest from these facts that there would be no liability on the part of Bail, for there was no loss occasioned by his negligence, the note could not have been collected of Linus with the exercise of diligence. Nor was Bail bound to effect the arrangement proposed by Linus, or to surrender to Smouse the collateral security, and upon these grounds the case was decided. Lowrie, J. says, "The debt was not lost by *the want of diligence* by Bail, but because he did not give back the claim to Smouse so as to enable him to make an arrangement which *Bail could not have made*. Surely it is plain

that Smouse had no right to this until he should pay his debt to Bail," implying that if the debt had been lost by the want of diligence by Bail, he would have been liable, and, taken in connection with the charge of the Judge in the court below, " That if the collateral security was lost by the *negligence of Bail*, the debt upon which the suit was brought is extinguished," which is not in any manner disapproved, shows that it was not the intention of the court to determine that the holder of collateral security of this character was not to exercise ordinary diligence to preserve its value, but rather to recognize the principle established as we think, by the courts of Pennsylvania to the contrary. *See authorities cited ante.*

The case of *Schroeppell vs. Shaw* is not in point. In that case the action was brought by the surety and not by the principal debtor; and stress is laid upon the fact that no notice had been given by the surety to his creditor to proceed, and the court in reviewing the authorities applicable to the case of a surety, expressly distinguishes the cases, *ex parte Moore*, 2 *Cox* 63, *and Williams vs. Price*, 1 *Sim. and Stew.* 581, as not applicable because not involving the relation of principal and surety.

In *Ormsby and another vs. Fortune*, 16 *Serg. and Rawle*, 302, the express agreement of the parties controlled the decision and regulated the rights and liabilities of the parties. In *ex parte Moore*, the debtor made an absolute assignment of the bond of a third person to his creditor as collateral security for a debt, and the bond was afterwards lost by reason of the insolvency of the obligor.

There seems to us to be great force in the views of the Lord Chancellor in that case when he says, " I am of opinion that whoever takes a bond in the manner this was taken, makes it his own to the effect of binding himself to make it

available as far as he can by ordinary diligence. Generally speaking, that which would be negligence in one employed to make the bond available, must be so in one who has taken upon himself to make it applicable in payment of the debt of the assignor, and who is invested with complete authority for that purpose."

By the unqualified endorsement and the delivery of the note by the payees before maturity, under the law merchant the legal title to the note and the indebtedness passed to the plaintiffs, and during the pledge, was entirely under their control, subject to the right of the defendants to have it applied to the payment of the debt, and their interest in the surplus, after payment. The plaintiffs therefore were clothed with all the power necessary to collect the note by suit or otherwise, and preserve not only the identical note and its legal efficacy, but also to protect and secure the indebtedness of which it is the evidence, and which was likewise embraced in the pledge ; and the defendants on the other hand were deprived of this power by the pledge, while the debt remained unpaid.

If it be urged that the debtor being in default can claim no equity as against the creditor so long as he continues in default, it is a sufficient answer, we think, to say that the default is necessarily recognised by the creditor in taking the collateral security, and his responsibilities in respect to the collateral security are all assumed in view of that event and are implied by law, from the contract.

It is established by the authorities, some of which are before cited, that the pledgee of negotiable paper is bound to ordinary diligence to preserve the legal efficacy of the pledge by demand and notice when necessary to preserve such efficacy, yet to do this the pledgee must resort to active measures and incur expense. The reason for thus requiring the

preservation of the legal validity of the pledge by the pledgee must be for the purpose of preventing its pecuniary value from being impaired, and because the pledgee only can do it. Upon what principle then can it be said that the pledgee is not required to use ordinary diligence to preserve the pledge from loss by the insolvency of third parties who are liable therefor.  It is to be observed that it is not the insolvency of the debtor himself that is to be guarded against, but a third person; the great object in both cases is to preserve the pecuniary value of the property; to do this, active measures, involving expense, are required in the one case and are necessary in the other; the same degree of diligence is required in each case, and in both the pledgee alone can resort to the means necessary for the preservation of the pledge.

But further, if the position of the respondents is correct, the debtor may be left entirely without remedy. A note given as collateral security may be due long before the principal debt matures.  In such case the creditor is not bound to receive the debt until it is due, yet he has entire control of the collateral security, it may be the note of a third person who is on the eve of insolvency, the creditor refuses to preserve the collateral security by its collection, the hands of the debtor are tied, he is in no default whatever yet he must stand by and see his property becoming utterly worthless by the insolvency of the maker of the note, or if a remedy exists it is to compel the creditor to active measures for the preservation of the debt, which is the very ground of objection to this defence.

But in case of an ordinary pledge of tangible personal property, the pledgee is bound to ordinary diligence in the preservation of the property whether it be perishable or not. What would be ordinary diligence in the one case would not be in the other, but the diligence is required whatever

may constitute it. The identical property when it can, must be preserved, but if it cannot, then the value must be preserved. Why will not the same rule apply to bills, notes, bonds and other choses in action. It is not alone the bill, note or bond that is pledged, for those are but the evidence of the indebtedness, but the indebtedness itself is the substantial matter of the pledge; it is as capable of protection as the paper or contract which is the evidence of it; the latter may be lost without impairing the former, but if the former is lost the latter is valueless. The indebtedness then is the substantial pledge, and as men in the exercise of ordinary care generally preserve property of their own of this character, they may also by the same care preserve it when it is the subject of a pledge, and as between the parties to a contract of pledge, like the one under consideration, we see no reason why the pledgee is not answerable when the pledge is lost through his negligence.

We are therefore of opinion that the respondents were required to exercise ordinary diligence to preserve the debt from being lost by reason of the insolvency of the maker, and to do so, under circumstances like the present, were required to resort to active efforts to collect the same by action.

If we are right in this position, the averments of negligence in the answer, we think, are clearly sufficient, and do not deem it necessary to discuss the same in detail. The answer therefore, sets up a good defence, and the motion for judgment on the pleadings should have been denied. The solvency of Carpenter, the maker of the note, in November, 1857 and during 1858, and his ownership of property at that time was an essential feature in the appellants' case, and the question put to Carpenter on this subject which was overruled by the court on the respondents' objection was material, and should have been allowed.

The judgment appealed from and the order therefor are reversed and a new trial awarded.