HENRY W. LAMBERTON, *et al.*

*vs.*

WILLIAM WINDOM, *et al.*

Where a debtor endorses and delivers to his creditor a negotiable promissory note as collateral security for his debt, and the note is lost through the insolvency of the maker, the creditor is not held responsible for such loss, unless it occurred through his negligence in not taking active measures to collect said note while the maker thereof was solvent.

*Held*, that the court below did not err in permitting the deposition of

Lamberton et al. v. Windom et al.

a deceased witness to be read in evidence although it appeared that since the taking of such deposition said deceased witness had been sworn and examined as a witness on a former trial of the action.

Records of deeds and other instruments relating to real estate, which at the time they were recorded were on account of imperfections in their execution or acknowledgment not entitled to record, may properly be received in evidence, and as *prima facie* evidence of the contents of the originals, under ch. 23, Laws 1866. This statute does not, however, authorize the admission in evidence of the records in a case in which the originals would not be admissible. Sundry minor objections to the admission of evidence considered and passed upon.

This action was commenced in the district court for Nicollet county, in 1861, to recover the amount claimed to be due on a promissory note executed by defendants to H. W. Lamberton, one of plaintiffs, on 4th day of September, 1857, for $370.70 and due in thirty days from date, and alleged to be the property of the plaintiffs.

The defendants as a first defence, deny any indebtedness to the plaintiffs. For a second defense and counter-claim they allege that at the time the note sued on was executed, the defendants indorsed and delivered to the plaintiffs, as collateral security for the payment of said note, a certain other promissory note made by one Willet Carpenter, August 12, 1857, to the order of the plaintiffs for $1,150, payable ninety days after date, with interest, which the plaintiffs received as such security; that at the time of such indorsement, at the maturity of such note, and for eighteen months thereafter the said Carpenter was solvent, and was the owner of a large amount of real and personal property in Winona county, of the value of more than $10,000, out of which, the said note could have been collected if the plaintiffs had used reasonable and proper diligence, of which the plaintiffs had notice; that in July, 1859, Carpenter became insolvent, and has since remained so, and has no property out of which the note can be

collected ; that his said note is unpaid and in the hands of plaintiffs ; that plaintiffs neglected to present the note to Carpenter at maturity, or demand payment, or to notify defendants that it was unpaid, and failed to take any steps for its collection ; that in the spring of 1858, and while said Carpenter was solvent, the defendants requested the plaintiffs to sue and collect said note or permit the defendants to do so, and offered to indemnify the plaintiffs by good and sufficient real estate security for their debt in the premises ; that the plaintiffs refused to sue said note, or permit the defendants to sue or collect the same, and so grossly neglected the same, that said note and the indebtedness of said Carpenter became and is wholly lost.

In a third defence, the defendants set out substantially the same matters as in their second, and aver an express agreement to collect the collateral security.

For a fourth defence, the defendants allege that plaintiffs have held said Carpenter's note for more than six years, and that the statute of limitations has run against it while in their possession and under their control ; that before the statute run defendants urged plaintiffs to take steps for the collection of the same, or allow defendants to do so, and offered ample security for such action, but that plaintiffs have failed and neglected to take any steps whatever for the presentation, demand, prosecution or collection of the same from the maker.

The reply, so far as necessary to be stated here, alleges the insolvency of Carpenter prior to the maturity of his note, and ever since ; that he claimed to be the owner of a large amount of property, but that the principal part of it was incumbered to an amount exceeding its value ; that his indebtedness exceeded the value of his property, and it denies that the note against him could with reasonable and proper diligence have been collected out of his property at its maturity or since.

Lamberton et al. v. Windom et al.

The cause has been twice tried before the court below without a jury. On the first trial the defendants admitted that the note sued on was the joint property of the plaintiffs; and on their part called Willet Carpenter, the maker of the note transferred as collateral security, and put to him the following question: "State whether you owned any property or real estate here on the 15th day of November, 1857, and during the year 1858?" The defendant's counsel stated and admitted that they did not intend or expect to prove a special, or any contract or agreement of the plaintiffs to collect the Carpenter note, other than the agreement implied by the indorsement and transfer of the note by defendants to plaintiffs, and the receipt thereof by plaintiffs, as collateral security for the payment of defendants' note. The court sustained plaintiff's objection to the question as immaterial, and on their motion ordered judgment for plaintiffs on the pleadings. Defendants appealed from the judgment to this court, and it was vacated and a new trial ordered. *See* 12 *Minn.* 232. At the second trial, after plaintiffs had rested, the defendants, among other things, offered in evidence the deposition of Mr. Wheeler Sargent, one of the defendants who had died since the suit was commenced. The plaintiffs objected because said Sargeant had since the deposition was taken been sworn and examined as a witness for defendants in the cause at the former trial, and the testimony given by him then in open court is the best evidence, and supercedes the deposition; and because the deposition was taken on account of a contemplated or possible absence, at the trial, and not under the statute providing for the perpetuation of testimony. The court overruled the objection and plaintiffs excepted, and a portion of the deposition, not obnoxious to a further objection made by plaintiffs and sustained, was read in evidence. The defendants also offered in evidence a deed from W. H. Welch to Willet

Carpenter, dated November 2, 1865. Plaintiffs objected on the ground that said Welch held the lands described in the deed under an official trust as judge, and that the deed was executed personally; their objection was overruled, and they excepted, but the record does not contain any copy of the deed. Similar omissions in the record make it impossible to determine whether there is any foundation in fact for several other objections made by plaintiffs and overruled. The records of several deeds and instruments were received in evidence against plaintiffs' objections that such deeds and instruments at the time they were recorded were not entitled to record on account of imperfections in the execution and acknowledgment; such as, being executed in another state before a justice of the peace, with no certificate to show that the justice was one in fact, and that his signature was genuine and the instrument executed according to the laws of such state, &c., &c. The record of a deed purporting to be from M. M. Ehle to Willet Carpenter was received against plaintiffs' objection that " it appeared by the record that the deed was not executed by the grantor in person, having been signed ' I. I. Ehle, attorney for M. M. Ehle.' No power from M. M. Ehle to I. I. Ehle was shown." A deed to Willet Carpenter of certain lots in East Rochester had been received in evidence and the said Carpenter when testifying, after stating he had been in the real estate business, and had a knowledge of the value of real estate in Winona county in 1857-8-9, and giving the value of a large number of tracts of real estate in that county, said: " I never saw the property in East Rochester but once. I don't know so much about that property as I do about the property here (in Winona.) I can't say what property in Rochester was bought and sold for in 1857 and 1858." The defendants then put this question to the witness: " What were these lots (meaning the East Rochester lots) worth ?"

Lamberton et al. v. Windom et al.

To this question the plaintiffs objected on the ground that the witness had not show sufficient knowledge of the value of said lots. The court overruled the objection and plaintiffs excepted, and the witness answered "I would put them at $25 each."

The record of a mortgage from Willet Carpenter to Harriet C. Huff had been received in evidence, and the defendants offered a satisfaction of said mortgage executed by said Harriet C., March 21st, 1863, to which the plaintiffs objected, " because it was executed long after the action was commenced, and because it was executed by Mrs. Huff alone and not jointly with her husband, there not being any competent evidence of Mr. Huff's consent to it.

The plaintiffs offered evidence tending to prove that at and after the maturity of the note sued on, the said Carpenter was insolvent; the defendants objected, on the ground that the evidence was immaterial, the court sustained their objections, and plaintiffs excepted.

The court found as conclusions of fact substantially, that at the maturity of the Carpenter note, and for six months thereafter, said Carpenter was the owner of real estate subject to attachment and execution, out of which the amount due on his note might have been collected; that by reason of plaintiffs' negligence the same has been wholly lost to the defendants, and that they have sustained damages thereby to the amount of the principal and interest due on said note.

The court as a conclusion of law found the defendants entitled to judgment against plaintiffs for the excess of the Carpenter note over and above the note sued on, which was entered accordingly, and the plaintiffs appeal therefrom to this court.

WILLIAM MITCHELL, for Appellants.

JAMES SMITH, JR., for Respondents.

*By the Court.*—BERRY, J.—This case appears in this court for the second time. An abstract of the complaint and answer will be found in 12 *Minn.* 232. It will be seen that the answer sets up the solvency of Carpenter, the maker of the collateral note, at the time of the maturity thereof, and for the space of eighteen months thereafter. The reply distinctly denies such solvency. The defendants' criticism upon the *form* of denial seems to be strained. The answer also sets up that Carpenter, at the maturity of said note, and for eighteen months thereafter, was the owner of a large amount of real and personal property out of which the note could have been collected if plaintiffs had been diligent. The reply, admitting that Carpenter claimed to be the owner of a large amount of property, avers that the principal part of it was encumbered to an amount exceeding its value, and that his indebtedness exceeded the value of his property, and denies in terms that the note could with reasonable or proper diligence have been collected out of his property at the maturity of the note, or since.

Carpenter's insolvency is admitted on both sides, the defendants claiming, however, that he became insolvent in July, 1859, some twenty months after the maturity of his note, and still remains insolvent; while plaintiffs insist that he was insolvent prior to the maturity of the note, and has been insolvent ever since. The action was tried below by the court without a jury. The court finds as conclusions of fact, that at the time of the maturity of the collateral note, and for six months thereafter, Carpenter was the owner and in possession of real estate subject to attachment and execution, out of which the amount due upon said note might have been collected; and that by reason of the negligence of the plaintiffs, the amount due upon said note has been wholly lost to the defendants, and that defendants by reason of such negligence, have

Lamberton et al. v. Windom et al.

accordingly sustained damage to the full amount due for principal and interest of said note. Judgment is accordingly rendered in favor of defendants for the amount of said collateral, or Carpenter note, less the amount of the note upon which this action is brought, to-wit: the note made by defendants. There is no finding upon the issue of Carpenter's solvency. The most important question before us is whether this issue is material. If it is, the court below erred in not finding upon it, and in excluding evidence offered by plaintiffs to show insolvency. This question was not distinctly considered when the case was here before, as it was not necessary that it should be. The case was then determined upon the error of the court below in allowing plaintiffs' motion for judgment upon the pleadings, upon the ground that defendants' answer contained no defence, and the further and cognate error of refusing to permit defendants to show that at the time of the maturity of the Carpenter note, and subsequently, Carpenter was the owner of property, real and personal. The evidence thus excluded would have been pertinent (as far as it went) both upon the issue of solvency, and upon the issue as to Carpenter's ownership of property out of which the note might have been collected; and the defence set up in the answer comprised both solvency, and such ownership of property.

The point decided in the case is succinctly expressed in the syllabus, as follows, viz.:  "When a debtor endorses and delivers to his creditor a negotiable promissory note made by a third party as collateral security for a debt, in the absence of any other agreement, and the note is lost through the negligence of the creditor, by the insolvency of the maker, the creditor is liable, and these facts set up in an answer as a defence to an action on the principal debt, are sufficient." An examination of the opinion will show that the negligence set

up in the answer in the case, (to which the syllabus of course has reference) as going to make out a defence, is the plaintiff's failure to resort to active measures to collect the collateral note, Carpenter, its maker, being at its maturity, and for a considerable time after, solvent, as well as owner of a large amount of property out of which the debt could with proper diligence have been collected. And so at the conclusion of the opinion it is remarked that "the solvency of Carpenter, the maker of the note, in November, 1857, and during 1858, and his ownership of property at that time, was an essential feature in the appellants' (defendants') case, and the question put to Carpenter on this subject * * * was material." The former decision in this case does not then go, as the court below seems to have considered, to the extent of holding that irrespective of his solvency, the ownership of property by Carpenter at and subsequent to the maturity of the collateral note, out of which property the note might have been collected, was sufficient, even if plaintiffs had no notice of such ownership, to charge the plaintiffs with negligence in not taking active measures to collect the note. So far then as that decision is concerned, the question whether Carpenter's solvency was necessary to plaintiffs' liability to defendants for failing to take active measures to collect the collateral note, is an open one. In other words, that decision does not distinctly determine whether or not the issue as to Carpenter's solvency is material. We are, however, of opinion that it is material. There is a distinction taken between the liability of a creditor to a principal debtor for negligently failing to collect collateral securities pledged by such debtor, and the liability of a creditor to a surety, for neglecting to proceed against a principal, (see this case, 12 *Minn.* 252). We can, however, conceive of no reason why the rule, which, in the latter case, requires that in order that the creditor be held liable, the principal

debtor should be solvent at the time when the surety requests the creditor to proceed against him, should not apply, in principle, in the former case.   The rule referred to is laid down in *Warner vs. Beardsley,* 8 *Wendell,* 195 ; *Hoffman vs. Hulbert,* 13 *Wendell,* 378 ; *Herrick vs. Borst,* 4 *Hill.* 650.   In the case of *Herrick vs. Borst,* it is said " the question to be decided is, whether under our rule for the protection of sureties a jury should be allowed to speculate on the event, and bar the creditor accordingly as they may guess that the suit against the principal would have been successful or not.   I understand the rule to be, not that the jury can appraise the possibility, and relieve the surety in proportion to the value of the chance ; but that if the principal was solvent when the notice was given, and the neglect to sue be followed by subsequent insolvency, the whole action is barred."   It seems to us that these reasons for making the solvency of the principal necessary to the creditor's responsibility to the surety apply with equal force in a case like this at bar.   There is the same danger and impropriety in the latter, as in the former, in permitting a jury to speculate upon the chances of success in collecting a debt of a person who is not solvent; a person according to the definition given in the case cited who is not able to pay all his debts from his own means, or whose property is not in such a situation that all his debts may be collected out of it by legal process.   To make the liability of the creditor depend upon his ability to collect from a person in this condition would be, it seems to us, to engraft an element upon commercial law altogether inconsistent with its characteristic and necessary certainty.   We are, therefore, of opinion that the issue as to Carpenter's solvency was material, and that the court below should have received the evidence offered thereupon, and should have found upon the same.   The judgment must therefore be reversed; but with reference to

future proceedings we will consider some other points made by plaintiffs.

On the trial a portion of the deposition of Sargent, one of the defendants who had deceased, was read, the plaintiffs objecting because since the deposition was taken, Sargent had been sworn and examined in open court as a witness on the part of the defendants on a former trial of the action, and the testimony so given by him is the best evidence, and supercedes the deposition; and for the further reason that the deposition was taken on account of a contemplated or possible absence at the trial, and not under the statute providing for the perpetuation of testimony. As to the first objection, we can only say that no reasons are furnished, nor authorities cited in its support, and we can see nothing in it. See, however, 1 *Greenleaf Ev. sec. 163, and cases cited.* As to the second objection, our statute (*sec. 27, chap. LXXIII General Statutes,*) provides as follows: "No deposition shall be used if it appears that the reason for taking it no longer exists; *provided,* that if the party producing the deposition in such cases shows any sufficient cause then existing for using such deposition, it may be admitted." The death of the deponent would seem to be cause sufficient under this provision of statute.

Very many objections were made by plaintiffs to the rulings of the court below in admitting and excluding testimony. We will not consider them all in detail, as some of them are so imperfectly presented, that it does not appear whether or not there is any foundation for them in fact; as for instance, in case of the deeds from Judge Welch and others; and indeed most of them are merely stated here without argument or authorities, and do not seem to be much regarded or insisted on by counsel, while others still are of such a nature that they will not be likely to arise on a future trial.

In several cases the objection made was to the reception in

evidence of records of deeds and other instruments relating to real estate, which deeds and instruments at the time when they were recorded were, on account of imperfections in their execution, or acknowledgment, not entitled to record. By an act of March 2, 1866, when such deeds and instruments have been "actually recorded" the records may be "read in evidence in any court within this state, and shall be received as *prima facie* evidence of the contents of the originals;" and duly authenticated copies of such records may be read with the same effect as the records themselves. *Laws* 1866, *chap. XXIII.* We see no reason why the rule of evidence thus enacted was not applicable in this case, the object being, as we are left to conjecture, to prove that Carpenter in fact owned the property mentioned in the deeds and instruments, aforesaid. Of course this statute does not authorize the admission in evidence of the record in a case where the original would not be admissible.

The objection to Carpenter's testimony in regard to the value of East Rochester lots, would appear to have been well taken. He did not, so far as we discover in the paper book, show that he had any such acquaintance with them as qualified him to give an opinion as to their value.

The deed from Ehle to Carpenter should not have been considered as evidence in the case, if it in fact was, as the record hardly enables us to determine with certainty. Unless it was shown that the person who executed the deed was in fact the attorney of Ehle, as he pretended to be, the deed was clearly immaterial.

With regard to the admission of the mortgage satisfaction executed by Mrs. Huff, no ground occurs to us upon which it can be justified. If there is any, defendants' counsel should have pointed it out.

As at present advised we think the court below erred in receiving it, if for no other reason, at least for the reason that

it was not executed until long after this action was commenced, unless some special ground appeared for admitting it.

Judgment reversed, and new trial ordered.