## SELDEN F. JENKINS *vs.* NATIONAL VILLAGE BANK OF BOWDOINHAM.

*Pledgee's liability. Construction of receipt.*

A bank is bound to take ordinary care only of United States bonds pledged to it as collateral security for the payment of a note discounted by the bank.

A writing, executed by the cashier, acknowledging the receipt by the bank of certain United States bonds from the maker of a note discounted by the bank, " to be returned to him on the payment of his note in four months, dated May 9, 1866," is not a contract which increases the common-law liability of the bank, even if the cashier had the authority to do so.

ON REPORT.

ASSUMPSIT on a receipt, a copy of which may be seen in the opinion.

The time of payment of the note was extended by the defendant to Jan. 12, 1867, upon payment of $11.16 interest for the extension; and on the latter day the note was paid, and a return of the bonds demanded and refused.

The remaining facts appear in the opinion.

*S. & J. W. May*, for the plaintiff,

On the point of the authority of the cashier to execute the receipt, contended that he had such authority, unless the by-laws of the bank restricted him, which was not pretended, and cited *Burnham* v. *Webster*, 19 Maine, 232; *Farrar* v. *Gilman*, 19 Maine, 440; *Medomak Bank* v. *Curtis*, 24 Maine, 36; *Warren* v. *Gilman*, 17 Maine, 360; *Badger* v. *Bank of Cumberland*, 26 Maine, 435.

2. That the discounting of the note upon the collaterals offered and the giving the receipt were one transaction; that it was advantageous to the bank,—a part of its legitimate business. Having received the benefits, the bank cannot repudiate the burdens, even if the cashier exceeded his authority. Counsel contended that *Medomak Bank* v. *Curtis, supra*, was conclusive that the bank ratified the giving of the receipt by extending time of payment of note.

When a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good against accidents, because he might have provided against it in his contract. 2 Saunders, 422, a, note 2; *Mill-dam Foundry* v. *Hovey*, 21 Pick. 441; *Hadley* v. *Clark*, 8 T. R. 267; *Atkinson* v. *Ritchie*, 10 East, 533.

A loss by robbery or larceny raises a presumption of negligence, and the exercise of due and ordinary care must be affirmatively shown to repel the presumption of negligence. *Brown* v. *Waterman*, 110 Cush. 17.

Bank has remedy on cashier's bond if he violated his official duties.

*A. Libby*, for the defendant.

KENT, J. This case is referred to the court, on report of the evidence, with jury powers. We find the material facts to be these: The bank discounted a note of the plaintiff for $588 on four months, on the 9th of May, 1866, and at the same time, and as part of the transaction, received from the plaintiff as a pledge or collateral security two United States 10-40 bonds, amounting to six hundred dollars on their face. This transaction was assented to by the directors. The cashier on the same day gave to the plaintiff a receipt, in his official capacity, of the following tenor:

"NATIONAL BANK OF BOWDOINHAM, May 9, 1866.

Received of Selden F. Jenkins, United States 10-40 bonds, one of $500, and one of $100, amounting to six hundred dollars, to be

returned to him on the payment of his note for $558 in four months, dated May 9, 1866."

(Signed)                    " R. BUTTERFIELD, *Cashier*."

These bonds were kept by the bank, with the other bonds and papers and valuables of the bank and of depositors, in the safe, and with the same care as their own, and with reasonable care and oversight. The bank was entered by burglars on the night of the 21st of June, 1866, and the contents of the vault, including these bonds, removed and carried off. The bank used reasonable diligence in attempts to recover the property thus removed, but without success. The note has since been paid to the bank. This action is brought against the bank to recover the value of the bonds. The declaration does not allege any want of care on the part of the bank, but is based upon an alleged promise, in consideration of the delivery of the bonds, to return the bonds upon payment of the note. It does not set up a liability of a general nature, arising from the relation of bailor and bailee, but declares on a special promise to redeliver, at all events, upon payment of the note.

The counsel invokes the receipt of the cashier to sustain this action, and claims that it is a special contract, distinct and different from the one made by the directors, and shown by their signature on the book of the bank, wherein this note is entered in the list of " bills offered and discounted," and under the head of " first surety " is this entry, " 10-40 bonds collateral." The receipt of the cashier, it is contended, is an absolute agreement to keep, at all events, and to return on payment of the note. In other words, that thereby the bank became insurers, and bound to keep and return the bonds, whatever might happen. The counsel also contends that the cashier had a right thus to bind the bank by virtue of the powers conferred upon him by his office.

The last question is immaterial if the first proposition is not maintained. And we think it is not. The receipt amounts to no more than would be implied by law, on the facts which appear on the discount book. It is the simple case of a pledge of collateral securities, to secure the payment of a particular note, and that is all that

the receipt imports.   The collaterals are to be given back when the debt is paid.   That is all.

The case of *Field* v. *Brackett*, 56 Maine, 121, is in point.   In that case, the plaintiff alleged that the defendant received his (plaintiff's) wagon, the same to be kept and used by defendant for one month, and the defendant promised to return the wagon to him at the expiration of the month, in good order, but did not.   The defendant admitted the truth of these allegations, but replied that the wagon, during the month, was stolen, without any fault or want of due care on his part.   It was held by the court that there was nothing more intended by the promise than the law implies in such a case of bailment, viz., " to return at the time appointed in as good order as when received, ordinary wear and tear and casualties for which no blame could attach to the hirer excepted."   In these and like contracts, by which property is delivered under a contract of bailment, without the legal title passing, the law fixes the liability to keep with proper care, but does not make the bailee an insurer against robbery or casualties, when no fault attaches to him.   And it does not fix such liability of an insurer, if in the contract, written or verbal, there are no words assuming such undertaking.

The bank was held to the common-law liability by the action of the directors.   The receipt of the cashier merely expresses in more words, what the discount book sets out in a condensed form.

If it had undertaken to do more, and to charge the bank as insurers, we are by no means ready to say that such a contract would have come within the powers of a cashier.

The liability of a pledgee is well settled.   Mr. Justice Story (Bailments, 197) defines a pledge as " a bailment of personal property as security for some debt or engagement."   Kent says, " In general, the law requires nothing extraordinary of the pawnee, but only that he shall take ordinary care of the goods; and if they should happen to be lost, he may, notwithstanding, resort to the pawnee for his debt."   2 Kent's Com. 579.

This has been the law ever since the celebrated case of *Coggs* v. *Bernard*, 2 Lord Raymond.   Indeed, it is not denied by the learned

counsel for the plaintiff, who places his claim upon the receipt of the cashier, as a contract to deliver absolutely on payment. And as before stated, the declaration does the same, and is silent as to any want of care. If it had alleged, as the case is presented by the proof, we see but little difficulty in sustaining the proposition that all due and reasonable care was used by the bank under the circumstances.

According to the agreement of the parties, we must order

*Judgment for the defendant.*

APPLETON, C. J.; CUTTING, DICKERSON, BARROWS, DANFORTH, and TAPLEY, JJ., concurred.

WALTON, J., did not sit.