ALONZO P. HOWARD, administrator, *vs.* ELIJAH D. BRIGHAM.

B., H. and C. severally owned stock in a mining company and agreed in writing to combine their shares in one parcel and authorize C. to negotiate sales of any part thereof, subject however to the approval of B. and H., the proceeds to be divided among the parties in the respective proportions of their stock, and "the first proceeds from the sales of B.'s proportion" to stand "pledged for the payment of" a certain debt due from him to H. Afterwards B. transferred the record title of his stock to H., who receipted for it as "to be disposed of and proceeds paid in accordance with the foregoing agreement." At this time the stock had a value, but depreciated gradually until between two and three years afterwards it was sold by the treasurer of the corporation for nonpayment of an assessment, no sale having been made by C. under the agreement, nor B. having requested H. to sell any part of the stock transferred to him. In an action by H. against B. on the debt, *Held,* that the jury were warranted in finding on this evidence that B.'s transfer of stock to H. was as collateral security and not in payment of the debt; *Held also,* that the omission of H. to sell the stock so transferred to and receipted for by him did not render him liable for the loss by its depreciation.

CONTRACT to recover a sum of money alleged to be due from the defendant to the estate of the plaintiff's testator. Writ dated September 14, 1866.

At the trial in this court, before *Foster*, J., the defendant admitted his liability for the debt, unless the following facts, which appeared in evidence, constituted payment thereof.

On or about November 2, 1863, the plaintiff and the defendant, together with Winthrop Coffin, being severally owners of certain shares of stock of the Victoria Mining Company, nine thousand three hundred and fifty in all, of which the defendant's portion was four thousand six hundred and eighty-six, entered into an agreement in writing, bearing that date, setting forth that, "for the purpose of unison of action in effecting favorable sales," they agreed "to combine in one parcel the whole number of said shares," and "authorized said Coffin to negotiate for the sale of any part thereof, it being understood and agreed that any sale or sales shall be subject to the approval of the said Brigham and said Howard," and "it being also agreed that the proceeds derived from the sale of said stock or any part thereof shall be divided *pro rata* among the parties to this instrument in the proportions they have contributed stock respectively."

And the instrument contained this further provision: "It is further agreed on the part of said Brigham, for value received, that the first proceeds from the sales of his proportion of stock are pledged for the payment of, and shall be paid to said Howard, as administrator, to the amount of eight thousand four hundred and eighty-three dollars and twenty-one cents" (being the principal sum claimed by the plaintiff in this action), "and the proceeds from sales of the stock of said Brigham over and above the said sum shall be divided as herein provided, and paid over to him."

On November 9, 1863, the defendant transferred to the plaintiff his shares of the stock and took a receipt therefor (which, by the papers as certified to the full court, appeared to have been written below the original agreement, on the same piece of paper), setting forth that the plaintiff received the same "to be disposed of and proceeds paid in accordance with the foregoing agreement."

It further appeared in evidence that at the time of this transfer the stock "was valuable," but before the trial had become

worthless; and also that the defendant " never requested the plaintiff to sell the stock," and that no sale of it was ever made until March 10, 1866, when it was sold by the treasurer of the corporation for nonpayment of an assessment of one dollar per share.

The parties consenting that the question whether the stock was transferred by the defendant and accepted by the plaintiff on November 9, 1863, as payment of the debt in suit, or as collateral security therefor, should be submitted to the jury, the defendant requested the judge to instruct them, 1. " That whether or not the debt was extinguished by the plaintiff's taking the stock in his own name, his neglect to sell exonerates the defendant from all liability therefor;" and, 2. " That the legal effect of the plaintiff's receipt is to make an executed contract of their dealings, and to substitute the plaintiff for the defendant and Coffin; and, if the plaintiff lost the sale of the stock transferred, whether by desire to protect the stock belonging to his testator's estate, or, with Coffin, to control the market, he cannot fall back on his claim for which the transferred stock was substituted, and cannot maintain this action." But the judge declined so to rule, and did instruct the jury that, " if the stock was held as collateral security, the mere neglect of the plaintiff to sell the same would not render him liable for the loss by its depreciation, or be a defence to the action."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*E. Ames,* for the defendant. The defendant's agreement of November 2, was, so far as concerned the plaintiff, a pledge of the proceeds of sales to be made of stock of which the defendant, holding the certificate, had control; and, of itself, constitutes no bar to this action. But when the defendant, on November 9, transferred the record title, the plaintiff's acceptance of the transfer, combined with the previous pledge, amounted to accord and satisfaction of the debt. Thenceforward the defendant was excluded from approval or disapproval of sales of stock under the agreement; and, under his receipt, the plaintiff held the stock only with a liability to pay over to the defendant any surplus of

proceeds above the amount of the debt so extinguished, if there should be such a surplus.

At any rate, the question of accord and satisfaction or of col lateral security was one for the judge rather than the jury, who, even if the stock passed to the plaintiff as payment only so far as its proceeds would go, should have been directed to find the market value of the shares whenever they might have been sold after November 9, and to deduct it from the plaintiff's claim, if it should be less than the whole amount thereof. *Howard* v. *Ames*, 3 Met. 308. *Porter* v. *Blood*, 5 Pick. 54.

*H. A. Johnson*, for the plaintiff, was stopped by the court.

WELLS, J. The agreement of November 2, 1863, clearly imposed no obligation upon the plaintiff which would make him responsible for the neglect of Coffin to make sales of the stock at the proper time. Such sales were to be subject to the approval of the defendant as well as of the plaintiff, and the plaintiff had no more right to require sales to be made at any time than had the defendant.

The transfers and receipts of November 9, 1863, do not appear to have been made upon any new arrangement, as is contended by the defendant. They merely carry out the agreement already made. By the express terms of the receipts the stock is " to be disposed of in accordance with the foregoing agreement;" and we infer that the receipts were written upon the same paper with the agreement itself. Subject to the debt for which the shares were pledged the defendant retained his control of the stock, except so far as he and the plaintiff had both alike subjected their ·ights to the terms of the mutual agreement of November 2.

We think there is no ground for the argument that the transfers of November 9, by joining the record title in the stock to the previous pledge of the proceeds thereof, constituted, by operation of law, an accord and satisfaction, or payment of the debt *pro tanto*. And the jury have found as matter of fact that the stock was transferred and accepted as collateral security.

The foregoing statement of the case seems to make it suffi ciently apparent that the plaintiff cannot be held responsible for any loss occasioned by neglect to sell the stock. Even if

the transfer deprived the defendant of all control of the shares, and conferred it exclusively upon the plaintiff, yet by the terms of his receipts the plaintiff's right of control was made subject to the provisions of the agreement of November 2. The plaintiff was not authorized to make sales; for, by the agreement, in which both plaintiff and defendant had joined, that authority had been exclusively conferred upon Coffin; and only the right of approving or disapproving was reserved to themselves. The defendant himself had thus deprived the plaintiff of any right to dispose of the securities; and he cannot now throw upon him the consequences of a failure to sell them. It does not appear that the plaintiff ever withheld his approval of any proposed sale, nor that the defendant ever requested that sales should be made.

*Exceptions overruled.*