FREDERICK W. DEARBORN *vs.* THE UNION NATIONAL BANK OF BRUNSWICK.

*Bailment—degree of. Care requisite. Evidence in relation to care.*

This suit was brought to recover the value of certain bonds which, it is claimed, had been left at the bank as collateral security for money which the bank might, from time to time, advance the plaintiff. The plaintiff testified that on July 1, 1868, he went to the bank to obtain a loan upon this security; that the bonds could not be found, but that he received the money. The defendant requested the court to instruct the jury that "if the bonds were not found by the bank when the note of July 1st was offered, and were not afterwards found, the jury are not authorized to find that they were taken and held as collateral security for the note of July 1st." *Held,* that this instruction was properly refused.

The testimony of the assistant cashier of the bank as to other bonds having been lost or misplaced and afterwards found, *held* to be admissible, to show the manner in which the business of the bank was conducted, and as bearing upon the question of care.

ON EXCEPTIONS and motion for new trial.

ASSUMPSIT to recover the value of one $500 and two $100 "five-twenty U. S. bonds of the issue of 1862."

The writ is dated February 19, 1872. The declaration contains four counts.

The first count avers a deposit of the bonds, describing them separately, under an agreement that they should be used as a

pledge or collateral security for money to be loaned from time to time to the plaintiff by the defendants; a promise by them to take due and proper care of the bonds and to return them when redeemed; and that the defendants did not take care of the bonds, but negligently lost them.

. The second count, also giving a separate description of the bonds, avers a deposit as collateral security for a loan made at time of deposit, with similar averments of promises by defendants and of a breach thereof.

The third count is upon all three bonds, and alleges a deposit of the bonds to be returned on request, but alleges a double consideration, one the deposit of the bonds, and the other "that the plaintiff had hired and would thereafter hire moneys" of the defendants, with the formal averments of breach.

The fourth is a count upon all three of the bonds, with an averment of a deposit of bonds to be returned on request, alleging the consideration to be the deposit of the bonds, with formal averments of breach. The fourth count differs from the third only in the averment of the consideration.

The plaintiff testified that he had the bonds and coupons described in the writ and the last he knew of them they were in the Union National Bank, in July, 1865; that he had left them there as collateral security; had hired money of the bank, and was in the habit of hiring money.

Three notes were introduced in evidence. One for $500, dated Oct. 9, 1867, on four months, one (a renewal of the former) for $500, dated Feb. 12, 1868, on sixty days, and one for $800, dated July 1, 1868, on thirty days' time, all payable to the Union National Bank of Brunswick, or order. The plaintiff testified that these notes had all been paid; that the bonds in suit were the security therefor, and that there was no other security; that he had had other loans upon the same security; that he had requested these bonds of the defendants and never had received them; that when he went to the bank to get the $800 discounted, H. A. Randall, the cashier, asked Mr. Whitmore, one of the directors, what

the security was to be.   Whitmore replied that Mr. Dearborn had bonds there, and that he had seen them within a short time.   The plaintiff did not see the bonds at that time and has never seen them since.

Frank Pennell, assistant cashier of defendant bank during 1867 and 1868, called by the plaintiff, testified, subject to objection, that a Mr. Curtis, having bonds in the bank, called for them at one time and was told that they were not there, but were afterwards found to be there.   He also testified, subject to objection, that after he had left the bank, in 1868, he was sent for to find some bonds belonging to one Bailey, and that upon examination the bonds were found in the cash drawer.   He testified that such bonds were usually kept in boxes in the safe.

The defendants offered testimony tending to show that a note from one Osgood to the plaintiff, secured by mortgage, was taken by the bank as the only collateral security for the loan of the $800.   The defendants requested the presiding judge to instruct the jury that " if the bonds were not found by the bank when the note of July 1st was offered, and were not afterwards found, the jury are not authorized to find that they were taken and held by the bank as collateral security for that note of July 1st."   This instruction was refused, and to this refusal and to the admission of the testimony objected to by them and admitted the defendants except.   A motion to set aside the verdict as against the law and the evidence was also filed.

*Josiah H. Drummond* and *Francis Adams*, for the defendants cited, in support of the exceptions, *Dearborn* v. *Union National Bank*, 58 Maine, 273 ; *Smith* v. *First National Bank in Westfield*, 99 Mass. 605.

*Henry Orr; Tallman & Larrabee*, for the plaintiff.

The instructions were given " in a manner appropriate to the case," therefore defendant is not aggrieved. *State* v. *Barnes*, 29 Maine, 561 ; *Porter* v. *Seavey*, 43 Maine, 519; *Anderson* v. *Bath*, 42 Maine, 346 ; *Treat* v. *Lord*, 42 Maine, 552; *State* v. *Knight*,

43 Maine, 11; *Hovey* v. *Hobson*, 55 Maine, 256; *Brackett* v. *Persons Unknown*, 53 Maine, 238.

DICKERSON, J.   Assumpsit to recover the value of one $500 and two $100 "five-twenty" U. S. bonds. The writ contains four counts, some of them alleging that the bonds were left with the bank, by the plaintiff, as security for his note, with the formal averments of a breach of the contract, and the others that they were deposited as a gratuitous bailment. The cause was submitted to the jury upon these two grounds, the one requiring the defendant to exercise ordinary care, and the other holding him to the observance of slight care only in respect to keeping the bonds.

It appeared in evidence that the bonds were in the bank as collateral security in July, 1865, and that subsequently to that time the plaintiff had notes discounted at the bank, using these bonds as collateral security.

There was evidence tending to show that in October, 1867, the plaintiff had a five hundred dollar note discounted at the bank and used the $500 bond as collateral security therefor; that that note was renewed, and the renewal paid in May, 1868; that the bond was seen in the bank at that time, and the plaintiff told the cashier to put it with his other bonds. There was, also, evidence tending to show that on the first day of July, 1868, the plaintiff had an $800 note discounted at the bank, and that the bonds were held by the bank as collateral security for that note; and there was testimony tending to show that other security was taken for the $800 note. There was no evidence that either of the bonds was seen in the bank at that time, but there was evidence that, in answer to the inquiry of the cashier as to what the security for the $800 note was to be, one of the directors of the bank, then present, replied, "Mr. Dearborn has bonds here;" and upon the cashier looking into the boxes kept for the deposit of bonds without finding them, the same director added the remark, "they must be here, for I·have seen them within a few days."

Among other appropriate instructions, the court instructed the

jury that they were to ascertain whether the bonds were in the bank when the $800 note was negotiated on July 1, 1868. The jury must have understood that this was a necessary prerequisite to the bank holding them as collateral security for that note.

The counsel for the defendants requested the court to instruct the jury that "if the bonds were not found by the bank when the note of July 1st was offered, and were not afterwards found, the jury were not authorized to find that they were taken and held by the bank as collateral security for that note." The requested instruction was refused.

The question for the jury to determine was not whether the bonds were found in the bank on those occasions, or either of them, but whether they were actually there on the first day of July, when the $800 note was negotiated. If there at that time, though not then or subsequently found, they might have been held as collateral security for that note. The instruction asked for assumes that the bonds could not have been in the bank on the 1st of July, for either of the purposes claimed, if they were not then or afterwards found there, a *non sequitur.* If the bonds were actually in the bank at that time they might have been taken and held by it either as collateral security or a special deposit, though not then or afterwards found; there was no necessity of a manual tradition of them at that time by the plaintiff to the bank for either of those purposes.

There was no evidence in the case that the bonds were found in the bank either on the 1st of July or afterwards. To have given the requested instruction, therefore, in effect would have been to instruct the jury that they were not authorized by the evidence to find that the bonds were in the bank on the first day of July, and not being there then, they could not be taken and held as collateral security on the $800 note, as claimed by the plaintiff. This would have been to foreclose the question of fact, in issue before the jury, whether the bonds were held as collateral security for the note; under the instruction requested the jury could not find that fact in favor of the plaintiff, though the evidence should

authorize such finding. The requested instruction was very properly refused.

The testimony of the assistant cashier of the bank, as to other bonds having been mislaid or lost in the bank and subsequently found there, was admissible to show the manner in which the business of the bank was conducted in that respect, and as bearing upon the question of care.

We see no sufficient ground for setting aside the verdict as against evidence. There was positive evidence that the bonds were deposited with and demanded of the bank, and there was no evidence that they had been returned. Whether they were left as collateral security, or a special deposit without compensation, was a question of fact for the jury alone to determine, as was, also, the degree of care actually exercised by the bank in keeping them, under the plenary instructions received from the court. Whether the jury predicated their finding upon the one or the other theory of the plaintiff as to the character of the bailment does not appear; nor is that material since there was evidence applicable to both. *Motion and exceptions overruled.*

APPLETON, C. J.; CUTTING, DANFORTH, VIRGIN, and PETERS, JJ., concurred.