## SCOTT vs FIRST NATIONAL BANK OF TULSA.

Opinion delivered October 19, 1904.

1. *Bills and Notes—Pledged as Collateral—Liability and Duties of Pledgee—Banks.*

> A bank to which a debtor assigns a note secured by chattel mortgage, as collateral, is bound to use reasonable diligence to collect the collateral note and enforce the collection of the security; and failing in this, whereby the value of such collateral note and security is lost by the insolvency of the maker, the bank is liable to pledgor therefor.

Appeal from the United States Court for the Northern District.

JOSEPH A. GILL, Judge.

Action by Fred J. Scott against the First National Bank of Tulsa, Ind. Ter. Judgment for defendant. Plaintiff appeals. Reversed.

*P. S. Davis* and *Geo. C. Beidleman,* for appellant.

*Wm. M. Mellette* and *Edgar Smith,* for appellee.

RAYMOND, C. J. This is an action brought by appellant to recover from appellee for negligence in failing to collect a collateral note held by the bank as security for a note given by appellant, whereby the note was wholly lost. The complaint is as follows: "Comes now the above-named plaintiff, and respectfully shows to the court that he is a citizen of the United States, and resides at Tulsa, Ind. Ter., while the defendant is a corporation duly organized under the national banking laws of

the United States, and is doing business at Tulsa, Ind. Ter., within the Northern District of the Indian Territory, and nearer to Wagoner than any other place where a United States Court is held therein. Plaintiff further says: That on or about the 9th day of June, 1900, he was the owner and holder of a certain promissory note dated on the 1st day of May, 1900, for the sum of $450, with interest at the rate of ten per cent. from date, which note became due and payable on the 1st day of November, 1900. That said note was drawn in plaintiff's favor, and was signed by one Mose Perryman, that said note was secured by a chattel mortgage given by said Mose Perryman to this plaintiff on one-third of three hundred acres of growing corn and three hundred acres of stalk fields situated on the farm of said Perryman, about two and one-half miles northeast of Old Mounds, Northern District, Indian Territory. Said security was ample to make said note collectible therefrom, and said mortgage was duly filed in the office of the clerk of the United States Court for the Northern District at Muskogee, Ind. Ter., where it still remains. That on the 9th day of June, 1900, plaintiff executed and delivered his promissory note for one hundred and ninety-two ($192) dollars to G. C. Simmons, which note also bore interest from date at the rate of ten per cent., and was made payable ninety days thereafter, and at the time of the execution and delivery of the last described note plaintiff transferred and assigned said Mose Perryman note in the usual course of business, which note was not then due, to the said Simmons, as collateral security. That at the time of said transfer he informed said Simmons that said collateral note was secured by a chattel mortgage as aforesaid. That thereafterwards, and before either of said notes became due, the said Simmons transferred and assigned both of said notes in the usual course of business to one C. W. Brown, who thereafter, and before the maturity thereof, transferred and assigned the same in the usual course of business to the defendant, the said First National

Bank of Tulsa, Ind. Ter., who still holds said collateral note. Plaintiff further states: That at the time he transferred said collateral note to said Simmons it was the understanding and agreement that he would protect and enforce plaintiff's chattel mortgage security as aforesaid, and, after paying himself the amount of plaintiff's indebtedness to him, would turn the remainder over to this plaintiff. That said note was transferred by Simmons to Brown and by Brown to defendant with the same understanding and agreement. That when said collateral note became due and payable all of said chattel security was located on the said farm of Mose Perryman, in the Northern District of the Indian Territory, and was subject to the satisfaction of the same. That there were no other liens on said corn and stalk fields, and that defendants could easily have realized the full amount due thereon had they been diligent to enforce same; but that said defendant bank stood idly by, and negligently and in utter disregard of plaintiff's rights allowed said security to be wasted, destroyed, and removed, so that nothing was ever realized therefrom, and said lien was wholly lost. That thereafter the said Mose Perryman departed this life wholly insolvent. That said note and mortgage are long since past due, and wholly unpaid, owing to the negligence and carelessness of the defendant as aforesaid. That said defendant on the 24th day of January, 1901, sold and transferred plaintiff's said individual note for $192, and the same is now in the hands of an innocent purchaser. That at the time of said sale and transfer of said note both of said notes were long since past due, and all of said security, as aforesaid, had been lost, wasted, and destroyed. Wherefore plaintiff prays judgment against said defendant for the sum of $450, his debt, and interest on the same from May 1, 1900, at the rate of ten per cent. per annum, and for all costs, and for other proper relief." There was a demurrer interposed by defendant as follows: "Comes now the defendant, the First National Bank of Tulsa, by its attorneys, Mellette & Smith,

and demurs to the complaint of the plaintiff herein, because it says that it appears from said complaint that the same does not state facts sufficient to constitute a cause of action.    Wherefore defendant prays judgment that it be not required to plead further herein." The demurrer was sustained, and suit dismissed.    The plaintiff brings the case here for review by appeal.

Does the complaint state a cause of action?    If so, there must be a reversal of the case.    If not, the decision of the court below must be affirmed.    The contention of appellant is that it was the duty of the bank holding the collateral to have collected it, and applied part of the proceeds towards the payment of his note, and accounted to him for the remainder.    Under the pleadings the note of plaintiff was for $192, bearing date June 9, 1900, and due in 90 days thereafter.    The face of the collateral note securing it was $450, dated May 1, 1900, and due November 1, 1900.    This collateral note was secured by chattel mortgage on one-third of 300 acres of growing corn and 300 acres of stalk fields, and the averment of the complaint is that this crop was ample security for the payment of this $450 note. The averment is that at the time of the maturity of this collateral, which was 50 days after the maturity of appellant's note held by defendant bank, all of the property described in the chattel mortgage was located on the farm of Mose Perryman in the Northern District of the Indian Territory, and was subject to the lien securing the $450 note, and that there were no other liens thereon; that defendants could easily have realized the full amount due thereon had they been diligent to enforce the lien, but that, in utter disregard of plaintiff's rights, they allowed said security to be wasted, destroyed, and removed, so that nothing was ever realized therefrom, and said lien was wholly lost; that thereafter said Mose Perryman died, and that his estate is insolvent; that said note is long past due, and wholly unpaid, owing to the negligence and carelessness of said defendants; and

that defendants on January 24, 1901, sold the plaintiff's note to an innocent holder. The suit was commenced February 18, 1901. Under these circumstances, taking the averments in the complaint to be true, as must be done in considering the demurrer, what was the duty of the bank toward plaintiff, Scott? If the pledged property had been precious stones or silver plate, it could not be controverted but that it was the duty of the pledgee to safely keep them, and, if lost or stolen through the negligence of the pledgee, he would be liable to the pledgor. If the pledge had been of grain or hay, it could not be contended but that it would be the duty of the pledgee to safely store the articles so that they could not be destroyed by the weather, or fire, or lost by theft. If lost or destroyed through the negligence of pledgee, he must respond in damages to pledgor. If the pledge consist of cattle or horses, the pledgee would be bound at his peril to feed and care for them, and if, through his negligence, they starved or strayed away, he must answer for his neglect. And while the holder of commercial paper as collateral security is required to use a different kind of diligence from the one holding precious stones, silver plate, grain, hay, or cattle and horses, yet the diligence in each case is only such as is appropriate to the nature of the pledge. The diligence required of the holder of promissory notes is of the character that an ordinarily diligent, prudent man would use in the matter of notes due to him; that is, to see to it that the statute of limitations does not bar an action on the notes, or that the maker does not become insolvent before some action to secure the payment is taken, or, if the claim is secured by chattel mortgage on perishable property, to see to it that the property is not lost, dissipated or destroyed. As said by Mr. Hale in his work on Bailments: "A prudent business man will collect such obligations when they are due, or will endeavor the collection by suit. If, therefore, a pledgee neglects to enforce the collection of such securities held in pledge, and delays till the parties liable become insolvent, he is

as much guilty of negligence as if he had suffered grain held in pledge to be destroyed by dampness or heat, or for lack of proper storage.    Accordingly, if the pledge consists of indorsed negotiable paper, the pledgee must present it for payment at maturity, and, if it is not paid, must give notice to charge the indorsers, or, if loss ensues, he will be liable to make it good.    However, as against the pledgor himself, a pledgee is not held to such strict rules in regard to the presentation at maturity of a note taken as collateral security and notice of nonpayment to the pledgor. The note is not received, although indorsed by the pledgor, upon the condition that the pledgee would exercise such diligence.    It does not represent the original debt, and, to hold the pledgor it is not necessary that the pledgee should regularly proceed to have the note presented and protested.    It was not a satisfaction or extinguishment of the original debt, and a failure to give notice will not, necessarily, defeat a recovery on the pledge debt. The pledgee will be liable for neglecting to put the collateral in suit, when a prudent man would do it, if any loss results from the neglect.''    Hale on Bailments, § 34.

A very interesting case discussing the question presented here will be found in the Minnesota Reports.    In that case the following facts formed the basis of the controversy:    "That on the 4th day of September, 1857, the defendants, partners, were indebted to the plaintiffs in the sum of $370.70; that afterwards, and on that day, the defendants, in consideration of said indebtedness, made their promissory note, bearing date the same day, for $370.70, payable to the order of H. W. Lamberton, one of the plaintiffs, thirty days after date, with interest at 60' per cent. per annum after due; that no part thereof has been paid except twenty-five dollars paid and indorsed thereon on the 5th day of October, 1858.  The defendants, in their answer, admit the making of the note and the payment thereon, but allege as a defense thereto and a counterclaim that on the 4th of September,

1857, and simultaneously with the execution of the note mention-
ed in the complaint, the defendants indorsed and delivered to
the plaintiffs as collateral security for the payment of said note
a certain other promissory note, made by one Willet Carpenter
August 12, 1857, to the order of the defendants, for $1,150,
payable ninety days after the date thereof, with interest at ten
per cent. per annum, but, if not paid at maturity, with interest
at the rate of three per cent. per month till paid; that at the time
of the delivery and indorsement of said Carpenter note it was of
the value of $1,150; and that the plaintiffs agreed to and did
receive the same as collateral security for the said note mentioned
in the complaint. The answer also avers that at the time of the
indorsement of said note as collateral security, and at the time
the same became due, Carpenter was solvent, and able to pay the
same, and was the owner of a large amount of real and personal
property in the county of Winona, of the value of ten thousand
dollars and more, out of which the said note, principal and
interest, could have been made and collected if the plaintiffs
had used reasonable and proper diligence in the collection of said
note; that Carpenter continued to own said property, and
remained solvent and able to pay said note, for a long time after
its maturity, viz., for eighteen months, and during said time
the note, with reasonable diligence, might have been collected,
of which the plaintiffs had notice; that in July, 1859, Carpenter
became, and has since been, and is still insolvent, and has no
property out of which the note can be collected; that the note is
not paid or collected, and is still in the hands of the plaintiffs;
that the plaintiffs failed and neglected to present the note to
Carpenter at maturity, or to demand payment thereof, or to
notify defendants that the note was unpaid or dishonored, and
failed to take any steps for the collection thereof. * * * A
fourth defense, supplementary to the defenses aforesaid, sets
up that the plaintiffs have held said note for more than six years,
and that the statute of limitations has run against the collateral

note while in possession and under the control of the plaintiffs. The question presented in this case, therefore, is whether a creditor who holds a promissory note of a third party, made to his debtor, and indorsed by such debtor to and received and held by the creditor as collateral security for his debt, is liable, under such circumstances as are set forth in the answer, for the loss of the note through the insolvency of the maker. Questions involving the rights and duties of holders of collateral securities have come up in various forms qualified by the nature of the agreement under which they were received and held, the relation of the parties to such agreement, and the character of the property held as collateral. In this case there is no express agreement with reference to the pledge. The rights and obligations of the parties, therefore, are such only as arise from the indorsement and delivery of a negotiable promissory note of a third person by the principal debtor as a security for his debt. No question as to the rights or obligations of a surety is involved, the question presented being between the immediate parties to the contract—the principal debtor as pledgor, and the creditor as pledgee. So far as the authorities upon this subject are concerned, there is no doubt that the pledgee of negotiable paper as collateral security is bound to ordinary diligence in preserving the legal validity of the pledge, and answerable for a loss through a corresponding degree of negligence to the extent of such loss. 2 Parsons on Contracts (5th Ed.) 511; Jennison vs Parker, 7 Mich. 355. And we think, as between the principal debtor and the creditor in a pledge of a similar character of negotiable promissory notes for the payment of which third parties are responsible, the authorities both in England and in this country impose upon the pledgee ordinary diligence to preserve the pecuniary value of the pledge, requiring, when necessary, active measures to prevent a loss by the insolvency of third parties who are liable for their payment. Ex parte More, 2 Cox, 63; Williams vs Price, 1 Sim. & St. 582; Parsons on Contracts (5th

Ed.) 110, note 't,' citing Noland vs Clark, 10 B. Mon. 239; Beale vs Mechanics' Bank, 5 Watts, 529; 3 Lead. Cas. Eq. (3d Am. Ed.) 552, 556; Lyon vs Huntington Bank, 12 Serg. & R. 67. The same doctrine is recognized in Bank of U. S. vs Peabody, 20 Pa. 457; Bitner vs Brough, 11 Pa. 127." Lamberton vs Windom, 12 Minn. 232 (Gil. 151), 90 Am. Dec. 301.

Justice Brown, in a New York case, discussing the duty of a pledgee, says: "The contract was a pledge of notes, and not a mortgage. It was entirely silent as to the power of the pledgee over the subject of the pledge. It imposed no conditions and prescribed no terms in regard to the disposition of the notes in the event of the loan not being paid at maturity. His power and authority to deal with them is to be determined by the law. The notes were deposited in his hands as collateral security, and we are to say what that term imported, what rights it conferred, and what duties it imposed upon the pledgee. The primary, and, indeed, the only, purpose of the pledge is to put it in the power of the pledgee to reimburse himself for the money advanced when it becomes due and remains unpaid. The contract carries with it an implication that the security shall be made effectual to discharge the obligation." Wheeler vs Newbould, 16 N. Y. 392. In concluding the opinion in the Lamberton Case the court holds: "By the unqualified indorsement and delivery of the note by the payees before maturity under the law merchant the legal title to the note and the indebtedness passed to the plaintiffs, and during the pledge was entirely under their control, subject to the right of the defendants to have it applied to the payment of the debt, and their interest in the surplus after payment. The plaintiffs, therefore, were clothed with all the power necessary to collect the note by suit or otherwise, and preserve not only the identical note and its legal efficacy, but also to protect and secure the indebtedness of which it is the evidence, and which was likewise embraced in the pledge; and

the defendants, on the other hand, were deprived of this power by the pledge while the debt remained unpaid. If it be urged that the debtor, being in default, can claim no equity as against the creditor so long as he continues in default, it is a sufficient answer, we think, to say that the default is necessarily recognized by the creditor in taking the collateral security, and his responsibilities in respect to the collateral security are all assumed in view of that event, and are implied by law from the contract. It is established by the authorities, some of which are before cited, that the pledgee of negotiable paper is bound to ordinary diligence to preserve the legal efficacy of the pledge by demand and notice when necessary to preserve such efficacy, yet to do this the pledge must resort to active measures and incur expense. The reason for thus requiring the preservation of the legal validity of the pledge by the pledgee must be for the purpose of preventing its pecuniary value from being impaired, and because the pledgee only can do it. Upon what principle, then, can it be said that the pledgee is not required to use ordinary diligence to preserve the pledge from loss by the insolvency of third parties who are liable therefor? It is to be observed that it is not the insolvency of the debtor himself that is to be guarded against, but a third person. The great object in both cases is to preserve the pecuniary value of the property. To do this, active measures involving expense are required in the one case, and are necessary in the other. The same degree of diligence is required in each case, and in both the pledgee alone can resort to the means necessary for the preservation of the pledge. But, further, if the position of the respondents is correct, the debtor may be left entirely without remedy. A note given as collateral security may be due long before the principal debt matures. In such case the creditor is not bound to receive the debt until it is due, yet he has entire control of the collateral security. It may be the note of a third person, who is on the eve of insolvency. The creditor refuses to preserve the collateral security by its collec-

tion.   The hands of the debtor are tied.   He is in no default whatever.   Yet he must stand by, and see his property becoming utterly worthless by the insolvency of the maker of the note; or, if a remedy exists, it is to compel the creditor to active measures for the preservation of the debt, which is the very ground of objection to the defense.   But in case of an ordinary pledge of tangible personal property the pledgee is bound to ordinary diligence in the preservation of the property, whether it be perishable or not. What would be ordinary diligence in the one case would not be in the other; but the diligence is required, whatever may constitute it.   The identical property, when it can, must be preserved; but, if it cannot, then the value must be preserved.   Why not apply the same rule to bills, notes, bonds, and other choses in action?   It is not alone the bill, note, or bond that is pledged, for those are but the evidence of the indebtedness; but the indebtedness itself is the substantial matter of the pledge.   It is as capable of protection as the paper or contract which is the evidence of it.   The latter may be lost without impairing the former; but, if the former is lost, the latter is valueless.   The indebtedness, then, is the substantial pledge; and as men in the exercise of ordinary care generally preserve property of their own of this character, they may also by the same care preserve it when it is the subject of a pledge; and as between the parties to a contract of pledge like the one under consideration we see no reason why the pledgee is not answerable when the pledge is lost through his negligence.   We are therefore of opinion that the respondents were required to exercise ordinary diligence to preserve the debts from loss by reason of the insolvency of the maker, and, to do so under circumstances like the present, were required to resort to active efforts to collect the same by action." Lamberton vs Windom, supra.

In a Pennsylvania case, Justice Agnew, in delivering the opinion of the court, says:   "It is therefore settled in this state

that, where the collateral is lost by the insolvency of the debtor in the collateral instrument, through the supine negligence of the creditor, he must account for the loss to his own debtor, who invested him with its entire control." Hanna vs Holton, 78 Pa. 334, 21 Am. Rep. 24. In support of the opinion see the following cases: Word vs Morgan, 5 Sneed, 79; Smith vs Miller, 43 N. Y. 171, 3 Am. Rep. 690; Wakeman vs Gowdy, 10 Bosw. 208; Whitten vs Wright, 34 Mich. 92; May vs Sharp, 49 Ala. 140; Lamberton vs Windom, 12 Minn. 232 (Gil. 151), 90 Am. Dec. 301.

In a note following the decision of Miller vs Gettysburg Bank, 31 Am. Dec. 451, the following authorities are collected: "Where a creditor takes a negotiable instrument from his debtor as collateral security for the payment of his debt, and holds it until it becomes due, it is his duty to present it for payment at maturity, and, if it is dishonored, to give notice to the parties entitled thereto, in the same manner as if he were the absolute owner of the instrument. Peacock vs Pursell, 32 L. J., C. P. (N. S.) 266, 14 C. B. (N. S.) 728; Byles on Bills, 381; 1 Dan. Neg. Inst. 677, 684; Betterton vs Roope, 3 Lea, 215, 31 Am. Rep. 633; Smith vs Miller, 43 N. Y. 171, 3 Am. Rep. 690; Alexandria, etc., R. R. Co. vs Burke, 22 Grat. 254, 262; Sellers vs Jones, 22 Pa. 423, 427; Muirhead vs Kirkpatrick, 21 Pa. 237; Russell vs Hester, 10 Ala. 535; Schoul. Bail. 193, 213; Wheeler vs Newbould, 16 N. Y. 392; Reeves vs Plough, 41 Ind. 204; Foote vs Brown, 2 McLean, 369 (Fed. Cas. No. 4,909). But in the performance of this duty ordinary diligence and skill are the measure of the pledgee's responsibility. Reeves vs Plough, 41 Ind. 204; Lee vs Baldwin, 10 Ga. 208; Schoul. Bail. 193; Goodall vs Richardson, 14 N. H. 567." The supreme court of Alabama has decided: "It is clear also, under our decisions, that where a creditor has received notes as collateral security for his debt unconditionally, without any instructions governing the course

of collection, he is bound to take the necessary steps to perfect the liability of the parties; and, if the security is lost or rendered unavailable by his neglect, he must bear the loss." Pickens vs Yarborough's Adm'r, 26 Ala. 417, 62 Am. Dec. 728. "It is the duty of the pledgee to collect the collateral note, and apply enough of the proceeds to pay the debt secured, and return the balance to the pledgor." Zimpleman vs Veeder et al., 98 Ill. 613.

In a note in 32 Am. St. Rep. 718, will be found such a full and careful collection of authorities upon the rights, duties, and liabilities of the pledgee that the following portion of it is cited with approval: "Duties of Holder of Collateral.—As the holder of collateral security is entitled to its possession, and to the extent of his interest is substantially the owner thereof, he must, to a certain extent, at least, assume the duties of ownership; and, furthermore, must protect the interests of his pledgor as well as his own, because the latter, by giving the collateral security, has parted with the power to protect himself. The contract carries with it the implication that the security shall be made available to discharge the obligation. We apprehend that it carries with it the further implication that the property, no matter what its character, shall not be lost through the negligence or inattention of the pledgee. * * * Where a debtor assigns a judgment as collateral security to his creditor, he parts with his authority over it, and the assignee has the right and power to let the lien die or keep it alive, and must abide the consequences of his own will or negligence. Collingwood vs Irwin, 3 Watts, 306. The debtor is entitled to a credit for a loss upon a judgment assigned as collateral to his creditor when the loss is occasioned by the supine negligence of the assignee. Beale vs Mechanics, Bank, 5 Watts, 529. A bond or chose which is transferred as collateral security is put under the dominion of the creditor to make his claim out of it. His duties in respect to it are active. He is to employ reasonable diligence in collecting the money on the

security and applying it to the principal debt, and a conversion of it into a less security is such misuse as makes him accountable to the debtor. Muirhead vs Kirkpatrick, 21 Pa. 237. A creditor who holds a collateral security for his debt stands in a different relation to the assignor from that of a creditor to the surety for his debtor. By the contract the assignee is invested with the ownership of the collateral for all purposes of dominion over it. When the collateral is lost by the supine negligence of the assignee, he must account for the loss to his own debtor. Hanna vs Nolton, 78 Pa. 334, 21 Am. Rep. 20. The plaintiff parted with all this right of control over the collaterals, and the appellant was bound to employ reasonable diligence in their collection. McQueen's Appeal, 104 Pa. 595, 49 Am. Rep. 592. If the collateral security is a negotiable instrument, and measures are necessary to charge any party thereon, then there is no doubt that the holder of such security owes to the pledgor the duty of taking the measures necessary to preserve the liability of all the parties to the instrument. Roberts vs Thompson, 14 Ohio St. 1, 82 Am. Dec. 465; Hanna vs Holton, 78 Pa. 334, 21 Am. Rep. 20; Pickens vs Yarborough, 26 Ala. 417, 62 Am. Dec. 728; May vs Sharp, 49 Ala. 140; Douglass vs Mundine, 57 Tex. 344; Lee vs Baldwin, 10 Ga. 208; Barrow vs Rhinelander, 3 Johns. Ch. 614. If a demand for payment and notice of dishonor are required to charge any party to the instrument, and the holder neglects to make such demand or to give such notice, whereby the debt is lost, he is liable to the pledgor for the damages resulting to him. Note to Miller vs Gettysburg Bank, 34 Am. Dec. 451, 452; Peacock vs Pursell, 14 Com. B. (N. S.) 728; Hanna vs Holton, 78 Pa. 334, 21 Am. Rep. 20; Betterton vs Roope, 3 Lea, 215, 31 Am. Rep. 633; Smith vs Miller, 43 N. Y. 171, 3 Am. Rep. 690; Jennison vs Parker, 7 Mich. 355; Kennedy vs Rosier, 71 Iowa, 671, 33 N. W. 226; Whitten vs Wright, 34 Mich. 92; Pickens vs Yarborough, 26 Ala. 417, 62 Am. Dec. 728; Russell vs Hester, 10 Ala. 535. Where it is apparent that the omission to do an act

(21)

must release a party liable on the instrument, such omission is so clearly negligent, and so likely to result in injury to the pledgor, that there can be no doubt that the pledgee has failed in his duty and ought to be held answerable for the consequences. So if, through the supineness of the pledgee, a lien is lost, or property within his reach is allowed to be removed or applied to other demands, his want of diligence and its injurious results are equally apparent. Hence holders of collateral security must be held remiss in their duties, and therefore liable to the pledgors, when it appears that, having judgments as collateral, they failed to cause execution to issue and to be levied when they might have done so (Harper vs Second Nat. Bank, 12 Lea, 678; Word vs Morgan, 5 Sneed, 78), or they allowed the lien of the judgment to expire when they might by proper measures have revived it and kept it alive (Hanna vs Holton, 78 Pa. 334, 21 Am. Rep. 20). So, if collateral is secured by a lien which is lost through the pledgee's failure to prosecute proper proceedings to foreclose it (Hazard vs Wells, 2 Abb. N. C. 444; Russell vs Weinberg, 2 Abb. N. C. 422; Northern Ins. Co. vs Wright, 13 Hun. 168; Plymouth Co. Bank vs Gilman, 6 Dak. 304, 50 N. W. 194), or the right to bring action on the collateral, whether secured by a lien or not, becomes barred by the statute of limitations because of the pledgee's inaction, there can be no doubt that he has not done his duty to the pledgor (Semple, etc., Mfg. Co. vs Detwiler, 30 Kan. 386, 2 Pac. 511). In all these cases the want of diligence is so unquestionable that the presumption of negligence can scarcely be rebutted, though it is always open to the pledgee to show that no injury was suffered by the pledgor from the apparent want of diligence. Steger vs Bush, Smedes & M. Ch. 172. No extraordinary diligence is exacted of a pledgee in any event. All that the law requires is ordinary diligence, and whenever it is exercised he is not liable, though it may appear that by greater diligence the collateral might have been collected and the pledgor saved from loss. Miller vs Gettysburg, Bank 8 Watts, 192, 34

Am. Dec. 449, and note; Chaffe vs Purdy, 43 La. Ann. 389, 8 South. 923; Cardin vs Jones, 23 Ga. 175; Lamberton vs Windom, 18 Minn. 506 (Gil. 455); Slevin vs Morrow, 4 Ind. 425; Wells vs Wells, 53 Vt. 1; Reeves vs Plough, 41 Ind. 204. Where promissory notes secured by mortgages were transferred as collateral, and the mortgages contained powers of sale under which the holder of the notes might, at any time when interest was due and unpaid, have had the mortgaged property sold, and thus compelled payment, the failure to exercise such powers resulting in loss of interest through depreciation of the property, the holder of the collateral was held liable for such loss. The court, in its opinion, said: 'It is undoubtedly the law that the pledgee of a chose in action who receives it as collateral security is bound to use, not extraordinary care, as the master seems to have supposed, but ordinary or reasonable care or diligence to secure its payment when due. 1 Am. Lead. Cas. 402, 403; Lawrence vs McCalmont, 2 How. 426, 11 L. Ed. 326; Kiser vs Ruddick, 8 Blackf. 382. The law implies on the part of the pledgee, from the nature of the transaction, an agreement to use such care to protect the pledgor's interest and make the pledge available. Accordingly, if the pledge consists of indorsed negotiable paper, the pledgee must present it for payment at maturity, and, if it is not paid, must give notice to charge the indorser, or, if loss ensues, he will be liable to make it good. 1 Am. Lead. Cas. 123, 124; McLaughan vs Bovard, 4 Watts, 308; Ormsby vs Fortune, 16 Serg. & R. 302. And there are cases which go so far as to hold that the pledgee will be liable for neglecting to put the collateral in suit, when a prudent man would do it, if any loss results from the neglect. Lamberton vs Windom, 12 Minn. 232 (Gil. 151), 90 Am. Dec. 301; Wakeman vs Gowdy, 10 Bosw. 208; Slevin vs Morrow, 4 Ind. 425; Ex parte Mure, 2 Cov, 63; Williams vs Price, 1 Sim. & St. 581; Lyon vs Huntingdon Bank, 12 Serg. & R. 61; Hoard vs Garner, 10 N. Y. 261. But see 1 Am. Lead. Cas. 404. This being the law, we do

not see how defendant can justify her neglect to collect the installments of interest as they accrued, especially when we consider how cheap and expeditious a means she had of enforcing payment in the powers of sale contained in the mortgages. We have no hesitation, therefore, in holding that, having neglected to enforce the payment of the interest when she could so easily have done so, she must herself be held responsible for it.' * * The holder of negotiable securities, whether they consist of negotiable instruments or not, must exercise at least ordinary care in keeping them safely, and thus preserving them from loss (Petty vs Overall, 42 Ala. 145, 94 Am. Dec. 634; Jones on Pledges, §§ 403-405, 410); and this duty does not terminate on the payment of the principal debt, if the securities have not been surrendered to the pledgor. Thus, where a bank received as collateral security bonds, coupons, and stocks, the title to which was transferable by delivery, and which, after the payment of the principal debt, were stolen from the bank through its failure to exercise ordinary care, it was held to be answerable for the loss. Third Nat. Bank of Baltimore vs Boyd, 44 Md. 47, 22 Am. Rep. 35. But something more than the loss of the securities is required to make the holder answerable. Such loss must have resulted from his failure to exercise ordinary care. Mills vs Gilbreth, 47 Me. 320, 74 Am. Dec. 787; Jones on Pledges, §§ 510, 511. Therefore, if they are lost by burglary or larceny, without there being any want of ordinary care on the part of the, holder, he is not answerable. Winthrop Sav. Bank vs Jackson 67 Me. 590, 24 Am. Rep. 56; Jenkins vs National, etc., Bank, 58 Me. 275; Dearborn vs Union Nat. Bank, 61 Me. 369. The duty of the pledgee is not to be measured, or necessarily to be judged, by the manner in which he takes care of his own property. It is merely to exercise ordinary care, and is not increased by the fact that he exercises unusual care and diligence in his own affairs and in the protection of his own interests, nor is it diminished by the fact that he is negligent and inattentive to his own

interests as well as to those of others committed to his care.     In all instances there must be exercised such care and diligence in the custody of collaterals as persons of common prudency would exercise under like circumstances in keeping similar property.     Third Nat. Bank of Baltimore vs Boyd, 44 Md. 47, 22 Am. Rep. 35; Scott vs Crews, 2 S. C. 522, 535.     If a property taken does not consist of choses in action to be collected by suit, but of stocks or other property which the creditor is given power to sell, and to apply the proceeds to the payment of his debt, he may, by not acting promptly, suffer the property to remain in his hands unsold until it is wholly or partly lost or destroyed, or has depreciated in value, so that it clearly appears that it would have been better for the pledgor if the pledgee had promptly exercised his power to sell; and then the question presenting itself for decision is, which of the parties must bear the loss of the creditor's inaction?     If the pledgor has not demanded that the power to sell be exercised and the property disposed of, the authorities agree that the pledgee does not owe to him the duty of selling upon default in the payment of the principal debt, nor at any other particular time.     Colquitt vs Stultz, 65 Ga. 305; Robinson vs Hurley, 11 Iowa, 410, 79 Am. Dec. 497; Richardson vs Insurance Co., 27 Grat. 749; Rozet vs McClellan, 48 Ill. 345, 95 Am. Dec. 551; Howard vs Brigham, 98 Mass. 133; O'Neill vs Whighman, 87 Pa. 394; Granite Bank vs Richardson, 7 Metc. 407."     "The pledgee of a chose in action is bound to use ordinary or reasonable care and diligence to secure its payment when due. Where collaterals are placed by a debtor in the hands of his creditor, any failure on the part of the creditor to take steps in the ordinary course of collection, whereby the collaterals are rendered valueless, will make the creditor responsible for the loss."     Lawson, Rights, Remedies and Practice, vol. 4, § 1771. "The pledgee of a negotiable security has a right to collect the sum, and sue for it, if necessary, in his own name.     It is likewise the duty of a pledgee of negotiable paper to demand payment and

collect it when it falls due.   He is required to use 'due diligence' in doing so, and, if the collateral is lost or impaired by the negligence of the pledgee in this respect, he is liable." Lawson Rights, Remedies and Practice, § 1773. "The pledgee of commercial paper as collateral security is bound to hold and collect such paper as it falls due, and apply the money to the payment of the debt." Daniels on Negotiable Instruments, § 833. "It is the duty of the holder to collect the collateral when it becomes due." Randolph on Commercial Paper, vol. 3, § 1677. "The pledgee of commercial paper takes it as a trustee for the holder and pledgor.   As such it is his duty to hold the collateral and collect it at its maturity; and, when collected, he may, of course, apply the proceeds, without further authority to the satisfaction of the principal debt secured by it." Randolph on Commercial Paper, vol. 2, § 795. "It has been held that neglect to put a collateral in suit when a prudent man would do so would subject the pledgee to liability to the pledgor for any loss sustained thereby." Fields' Lawyers' Briefs, vol. 5, p. 73. Citing Vose vs Yulee, 4 Hun (N. Y.) 628; Insurance Co. vs Marr, 46 Pa. 504; Dugan vs Sprague, 2 Ind. 600; Insurance Co. vs Smith, 43 Wis. 329. "The question of negligence in such a case would be one of fact for the jury, and would depend upon the circumstances of the case, in the absence of any special agreement on the subject." Fields' Lawyers' Briefs, vol. 5, citing Word vs Morgan, 5 Sneed (Tenn.) 79; Cherry vs Miller, 7 Lea (Tenn.) 305; Lee vs Baldwin, 10 Ga. 208; Davis vs Alston, 61 Ga. 225; Slevien vs Morrow, 4 Ind. 425. "The rule is that the pledgee must exercise ordinary and reasonable diligence to secure the fruits of the collateral, but he is held to no greater degree of diligence, and extraordinary care and efforts in the collection of the collaterals are not necessary.   Whether or not a pledgee of collaterals has used due diligence to collect them is a mixed question of law and fact.   It is not for the court to determine that due diligence has been used.   It is the province of the court to instruct the jury

what is due diligence, and for the jury to find whether that diligence has been used. It has been declared that, where a pledgee of collaterals has failed to collect them, the burden is upon him to show an excuse for such failure." 22 Am. & Eng. Ency. of Law (2d Ed.) pp. 902, 903. "When negotiable instruments are pledged as collateral, it is the duty of the pledgee not only so to deal with them as not to destroy or impair their value, but he is to use ordinary diligence to make them available for the payment of the debt. If he suffers indorsed paper to mature without resorting to the necessary steps to charge the indorser, or fails to pursue reasonably the primary parties, he may become responsible for any loss that may ensue." Easton vs German American Bank (C. C.) 24 Fed. 523.

The suggestion is made that it is a hardship upon a pledgee to take steps and incur expenses in making the collection of collateral. The law is plain that if a pledgee advance money for insurance, taxes, expenses incurred in protecting or collecting the collateral, it is a charge against the collateral, and pledgee may deduct all legitimate charges from the money collected. The Supreme Court of Illinois has passed upon this point, and Justice Magruder, in delivering the court's opinion, says: "In its account the bank makes certain deductions from the proceeds of the sale of the collateral security for expenses incurred by it in protecting and disposing of the security. We find nothing unreasonable in any of these deductions. Whatever reasonable expense is necessarily incurred by the pledgee in keeping and caring for the property pledged and protecting it against liens and taxes and assessments, available, is a fair charge against the property. Hills vs Smith, 28 N. H. 369; Starrett vs Barber, 20 Me. 457; McCalla vs Clark, 55 Ga. 53; Raley vs Ross, 59 Ga. 862; Jones, Pledges, § 400." Furness vs Union National Bank, 147 Ill. 570, 35 N. E. 624.

The case of Bast vs Bank, 101 U. S. 93, 25 L. Ed. 794, relied upon by appellee, is not in point. Here there is no other

contract between the parties than that implied by the transfer of the collateral note as security for the note of appellant. In the Bast Case there was an express contract, and, of course, it must be looked to for the agreement of the parties.

It is not necessary to pass upon the question as to whether or not parol evidence can be introduced to show what was the alleged agreement between the parties, if any, made simultaneously with the transfer of the note. That will come up at the trial of the cause on its merits. Under these authorities the court is of the opinion that the demurrer should have been overruled.

Cause reversed and remanded.

CLAYTON and TOWNSEND, JJ., concur.