[No. 13055.   Department Two.   April 11, 1916.]

CITIZENS BANK & TRUST COMPANY, *Respondent*, v.
N. RUDEBECK, *Appellant*.[1]

PLEDGES—DUTY OF PLEDGEE—CONSERVATION OF PLEDGE—OPTIONAL
CONTRACTS. A pledgee holding as collateral a contract for the pur-
chase of the controlling interest in a railway is not guilty of a
breach of duty in failing to conserve the collateral pledged by in-
forcing the contract, where it appears that the contract was purely
optional in form and unenforcible except by forfeiture of payments
made, the pledgee made no change in its terms, the assignee elected
to abandon and forfeit the same and gave notice to that effect, and
forclosure of the pledge was thereupon commenced within three
months, which conserved the rights of the pledgor as well as a
more prompt foreclosure would have done.

EVIDENCE—CONCLUSION OF WITNESS. A question as to whether a
change was made in a contract while the witness was in the east and
without his knowledge, is objectionable as calling for the conclusion
of the witness as to a fact occurring in his absence.

PLEDGES—DUTY OF PLEDGEE—DEPRECIATION—LIABILITY. A pledgee
of an optional contract for the purchase of a controlling interest in
a railway is not liable for the depreciation in the value of the
pledge by reason of the abandonment of the contract and the build-
ing of a railway of its own by the holder of the option.

Appeal from a judgment of the superior court for Sno-
homish county, Alston, J., entered December 30, 1914, upon
findings in favor of the plaintiff, in an action on contract,
tried to the court.   Affirmed.

*Howard Hathaway* and *Eugene H. Beebe*, for appellant.
*Sherwood & Mansfield*, for respondent.

PARKER, J.—The plaintiff bank seeks recovery upon a
promissory note, executed and delivered to it by the defend-
ant, and also the foreclosure and sale of collateral which was
assigned to it by defendant as security for the payment of
the debt evidenced by the note.   Trial in the superior court

[1]Reported in 156 Pac. 831.

resulted in findings and judgment in favor of the plaintiff, from which the defendant has appealed.

The claimed error particularly relied upon by counsel for appellant, and upon which is rested his claimed right to a new trial, is the exclusion by the court of certain testimony sought to be introduced in his behalf. In order to render plain our views upon this question, it seems necessary for us to notice somewhat fully the merits of the case touching appellant's affirmative defense; which is, in substance, that "the careless and dilatory tactics" of the respondent in dealing with the collateral security resulted in damage to appellant, in that thereby the value thereof became lost to him.

In September, 1908, a contract was entered into between the Puget Sound, Skykomish & Eastern Railway Company, the appellant, who was then the owner of substantially all its capital stock, and H. W. Hawks, for the sale to Hawks' of all of the capital stock of that company, excepting fifty shares thereof, and in effect transferring to Hawks the control of that company and its property. By the terms of this contract, the purchase price to be paid to appellant was $15,-000, payable in installments during the ensuing five years. This contract was, in effect, an option in favor of Hawks for the purpose contemplated, and expressly exempted Hawks from personal liability for the purchase price "except to the extent of the money which he has paid or will hereafter pay under the terms of this option." The only remedy available to appellant upon the failure of Hawks to make the payments contemplated was that of forfeiture of his right to complete the purchase. Two hundred and fifty dollars was paid by Hawks in pursuance of the terms of this contract at the time of its execution. Prior to July, 1913, Hawks sold and assigned to the Index-Galena Company his interest in this optional purchase contract with the view of that company's becoming the owner of the stock and a controlling interest in the railway upon completion of the purchase by it. There was no evidence introduced or offered upon the trial showing that

the Index-Galena Company assumed any personal liability whatever to pay the purchase price. By the assignment, it simply stood in the shoes of Hawks and was as free to abandon its right of purchase and thereby forfeit whatever sums may have been paid upon the contract as was Hawks before the assignment.

In July, 1913, appellant executed and delivered to respondent his promissory note, evidencing a debt then owing from him to it, and at the same time assigned his interest in the optional contract and all sums to be thereafter paid thereon, and also his certificate evidencing his ownership of the capital stock of the company, all as security for the payment of his note then given to respondent. Thereafter, in April, 1914, there remaining the sum of $2,025, due upon the note, he renewed the same by giving to respondent a new note for that sum, the assignment of the collateral made to it by appellant being retained by respondent as security for this new note. This new note matured on July 4, 1914, and remaining unpaid, this action was commenced in October, 1914, to recover thereon and to foreclose and sell the collateral pledged as security therefor.

While this collateral was in the hands of respondent, evidently before the giving of the renewal note, respondent was informed by the Index-Galena Company, the then holder of the optional sale contract, in substance, that it elected to forfeit the amount paid upon the contract and abandon its right to complete the purchase. This election was evidently made because that company concluded it could better afford to build a new railway for its purposes than to pay the balance of the purchase price under this contract and thereby obtain control of this railway. The Index-Galena Company thereafter, by consent of all parties, used the railway for a time in its logging operations, for which use it paid to respondent a monthly rental which, as received by respondent, was credited upon the debt due to it from appellant. This use, however, was discontinued upon objection thereto being made by

appellant.   While so using the railway, the Index-Galena Company constructed a railway of its own, which, by reason of its competing location, rendered, as claimed by appellant, the railway here involved of little or no value.

Counsel for appellant invoke what they conceive to be the general rule:

"That the pledgee of collateral has a duty devolving upon him to conserve collateral pledged, to collect the same, and apply the proceeds to the discharge of the obligation;"

citing *Scott v. First Nat. Bank*, 5 Ind. Terr. 292, 82 S. W. 751, 68 L. R. A. 488, a decision wherein the subject is reviewed at some length as applied to collateral security the value of which may become lost by the negligence of the holder thereof.

It seems to us, however, that, whatever may be the duty of the holder of property for the security of a debt owing to him to render such security effective and see that its value is not lost to the debtor, it is plain that no such duty has been violated by this respondent.   Counsel for appellant seem to proceed upon the theory that respondent did not use due diligence in enforcing payment upon the installments to be made upon the optional sale contract, and in allowing the Index-Galena Company to abandon the purchase contemplated by that contract.   Counsel seem to lose sight of the fact that that was not an enforcible contract against either Hawks or his assignee, the Index-Galena Company; but was, in effect, a mere option under which the purchase could be completed or not, as Hawks or the Index-Galena Company, his assignee, might elect.   Manifestly, the respondent had no power whatever to enforce payment of any part of the purchase price, having only the power to cause forfeiture of the prospective purchaser's rights thereunder, which forfeiture, as we have seen, was brought about by the election of the Index-Galena Company, Hawks' assignee.   It seems quite plain to us that the evidence leads to no other possible conclusion than that re-

spondent violated no duty whatever in so far as conserving the collateral security is concerned.

The only offer of proof referred to in the brief of counsel for appellant, claimed to have been erroneously excluded, is that shown by the three following questions asked appellant as a witness, which, upon objection of counsel for respondent, were by the court ruled out.

"Q. Did the bank change this contract with the Index-Galena people that you had with them upon this security in your absence and while you were east and without knowledge or not? Q. Have you been able to lease or sell your railroad since they built theirs? Q. Is your railroad now operated by anybody?"

The first of these questions, upon its face, calls for the witnesses' conclusion as to a fact occurring in his absence, and for that reason calls for hearsay evidence, rather than for a statement of a fact within his own knowledge. This is rendered even more apparent when other facts shown by the record are considered. Remarks made by the trial judge during the progress of the trial render it plain that the court was very careful not to exclude any competent or relevant proof tending to show that there had been any change voluntarily made by respondent in the optional sale contract which would work to the detriment of appellant, the judge going so far as to suggest to counsel for appellant that he would hear any competent evidence as to any such change, and also as to any change in the contract that could be construed as rendering the Index-Galena Company personally liable for the purchase price, such as would have enabled respondent to enforce the contract as one binding the purchaser to complete the purchase, instead of as a mere option furnishing no remedy other than that of forfeiture.

The second and third questions go only to the depreciation of the value of the railway, which, from other facts we have noticed, was probably because of the building of the new railway by the Index-Galena Company. Admitting all this

to be true—and the answers to these questions would prove nothing more—it seems plain to us that respondent could not be held liable for such depreciation in the value of the railway while the collateral was in its hands. Respondent could not prevent the Index-Galena Company from abandoning its option to purchase the railway, nor could respondent prevent that company building a railway of its own; nor is there any evidence showing that a more prompt foreclosure would have any better protected appellant's interests. For that matter, the foreclosure was fairly prompt, being commenced within about three months after the maturity of the note sued upon.

We note here the fact that the wife of appellant Rudebeck was also defendant and appellant in the case. We have referred to Rudebeck as appellant simply for convenience of expression.

We are of the opinion that appellant has had a fair trial and that he is not entitled to any damages to offset the amount due upon his note. The judgment is affirmed.

MORRIS, C. J., MAIN, and HOLCOMB, JJ., concur.